HENDERSON v DEPARTMENT OF TREASURY

Docket No. 312859. Submitted February 11, 2014, at Lansing. Decided September 25, 2014, at 9:00 a.m.

Paul A. Henderson filed a petition in the Tax Tribunal challenging an assessment against him by the Michigan Department of Treasury for the 2007 tax year. The department alleged that Henderson was liable under MCL 205.27a(5) as a corporate officer of Jefferson Beach Properties, LLC, for taxes and interest totaling $72,286.39. Henderson argued that the tax liability had been discharged by the United States Bankruptcy Court for the Southern District of Florida when that court discharged him from bankruptcy under 11 USC 1141. The department moved for summary disposition, asserting that the tax liability had not been discharged because the liability was for taxes due under Michigan's former Single Business Tax Act (SBTA). The department asserted that the SBTA imposed excise taxes and that, under 11 USC 523(a)(1)(A), a bankruptcy discharge under 11 USC 1141 does not discharge debt for excise taxes. A hearing referee granted summary disposition in favor of the department in a proposed opinion and order. Henderson filed exceptions to the proposed order, but the tribunal affirmed and adopted the proposed order in its final opinion and judgment. Henderson appealed.

The Court of Appeals *held*:

1. Under MCR 2.116(I)(5), the tribunal had to provide Henderson the opportunity to amend his pleadings. Under MCR 2.118(A)(1), Henderson's right to amend his pleadings became discretionary 14 days after he was served with a responsive pleading. Leave to amend pleadings should be denied only for particularized reasons, such as undue delay, bad faith, dilatory motive on the movant's part, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or the futility of amendment. Henderson asserted that the tribunal denied him the right to amend his pleadings, but the assertion was not supported by the record. The tribunal did not err when it indicated that Henderson had failed to demonstrate that amendment would be justified.

2. In the tribunal's order granting the department's motion to abey discovery until the tribunal issued its decision to adopt or

vacate the hearing officer's proposed order, the tribunal indicated that if it entered an order vacating the proposed order, Henderson would have the opportunity for discovery. Contrary to Henderson's assertion, the order did not promise him an opportunity for discovery. Because the tribunal ultimately chose to adopt the proposed order, no discovery was needed. There is no constitutional right to discovery in any judicial or quasi-judicial proceeding, including an administrative proceeding.

3. 11 USC 523 states that a bankruptcy discharge under 11 USC 1141 does not discharge an individual debtor from any debt for a tax of the kind and for the periods specified in 11 USC 507(a)(8). Section 507(a)(8) refers to unsecured claims of governmental units, including certain excise taxes. 11 USC 507(a)(8)(E)(i) specifically refers to excise taxes on a transaction. Under federal bankruptcy law, an excise tax is a tax on the enjoyment of a privilege or the carrying on of an occupation or activity. The SBTA was enacted to provide for a tax on financial activities. A tax on financial activities is a tax on transactions. Under former MCL 208.31(3), the SBTA provided that the tax levied and imposed under the act was imposed on the privilege of doing business in Michigan. Because the tax imposed under the SBTA possessed the characteristics commonly attributed to excise taxes—in that it was a tax on the enjoyment of a privilege or the carrying on of an occupation or activity—and it was imposed on certain financial activities, the SBTA imposed an excise tax on a transaction within the meaning of 11 USC 507(a)(8)(E)(i).

4. MCL 205.27a(5), as amended by 2003 PA 23, stated that if a limited liability company liable for taxes administered under Michigan's revenue collection act, MCL 205.1 *et seq.*, failed to pay the taxes due, its officers were personally liable for the failure. Henderson's assertion that because his liability under former MCL 205.27a(5) was derivative, it did not arise from an excise tax and, therefore, was discharged in bankruptcy, was without merit. The plain language of former MCL 205.27a(5) indicated that liability under the statute was for taxes. Because the tax imposed on Henderson was an excise tax on a transaction that was not discharged in the bankruptcy proceedings, the tribunal properly granted summary disposition in favor of the department.

5. MCL 205.27a was amended by 2014 PA 3. In *Shotwell v Dep't of Treasury*, 305 Mich App 360 (2014), the Court of Appeals held that 2014 PA 3 be given retroactive effect. Contrary to Henderson's argument, remand was not necessary in this case to address the amended statutory language given that the issues before the Court of Appeals and the tribunal concerned only the

nature of Henderson's liability, which was not affected by the amendment of the statute.

Affirmed.

TAXATION — BANKRUPTCY — DISCHARGE OF DEBT — EXCISE TAXES.

Under 11 USC 523, a bankruptcy discharge under 11 USC 1141 does not discharge an individual debtor from any debt for a tax of the kind and for the periods specified in 11 USC 507(a)(8), including excise taxes on a transaction; under federal bankruptcy law, an excise tax is a tax on the enjoyment of a privilege or the carrying on of an occupation or activity; Michigan's former Single Business Tax Act imposed an excise tax on a transaction within the meaning of 11 USC 507(a)(8)(E)(i).

*Miller, Canfield, Paddock & Stone, PLC* (by *Jack Van Coevering, Gregory A. Nowak,* and *Colleen M. Healy*), for Paul A. Henderson.

*Bill Schuette,* Attorney General, *Aaron D. Lindstrom,* Solicitor General, *Matthew Schneider,* Chief Legal Counsel, and *Nate Gambill,* Assistant Attorney General, for the Department of Treasury.

Before: SHAPIRO, P.J., and MARKEY and STEPHENS, JJ.

STEPHENS, J. Petitioner, a resident of the state of Florida, appeals by right the final opinion and judgment of the Michigan Tax Tribunal (MTT) granting respondent summary disposition and holding petitioner responsible for taxes under Michigan's former Single Business Tax Act, former MCL 208.1 *et seq.*[1] For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

A bill for taxes due, also referred to as the notice of intent to assess (the Notice), was issued by respondent

---

[1] All references to MCL 208.1 *et seq.* are to sections that were in effect for the 2007 tax year unless otherwise noted.

to petitioner on October 18, 2011. The Notice alleged that petitioner was liable under the act for taxes in the amount of $72,286.39[2] pursuant to MCL 205.27a(5) as a corporate officer of Jefferson Beach Properties, LLC. Liability was for the tax period ending December 2007. Petitioner challenged the Notice in the MTT.

The petition alleged respondent did not make a preliminary determination that petitioner was the individual responsible for paying the taxes and that the tax liability was subject to a bankruptcy plan and ultimately discharged by the United States Bankruptcy Court for the Southern District of Florida on August 3, 2011.[3] Respondent moved for summary disposition before the MTT on the basis of its authority to assess tax liability against corporate officers under MCL 205.27a(5) and the bankruptcy court's decree, which excluded the tax liability from discharge. A hearing referee granted summary disposition in favor of respondent in a proposed opinion and order. Petitioner filed exceptions, but the MTT affirmed and adopted the referee's proposed opinion and order. Before the proposed order had been affirmed, however, petitioner had served respondent with discovery. Respondent, in turn, moved for immediate consideration and to hold discovery in abeyance until the MTT's final order was issued. The MTT denied the motion for immediate consideration, but granted the motion for an abeyance, closing all discovery until the final opinion was issued.

The MTT issued its final opinion and judgment on August 24, 2012. It affirmed the proposed order, holding that the referee properly analyzed state and federal law to determine that Michigan's single business tax (SBT)

---

[2] $61,080 tax due, and $11,206.39 interest.

[3] Petitioner had filed for Chapter 11 bankruptcy in Florida the previous year, November 3, 2010.

was a nondischargeable excise tax under 11 USC 507(a)(8)(E). Petitioner moved for reconsideration of the MTT's opinion on two occasions and was denied both times. At no point did petitioner file a motion to amend his petition. In none of the papers filed with the MTT after his initial petition did petitioner contend there was a material question of fact regarding whether he was a responsible corporate officer and that, regardless of the characterization of the SBT, summary disposition was, therefore, inappropriate.

## II. PETITIONER'S RIGHT TO AMEND HIS PLEADINGS

Petitioner argues the MTT denied him the right to amend his pleadings and incorrectly applied MCR 2.116(I)(5). We find no support for this argument in the record. Our standard of review is clear. "Where fraud is not claimed, this Court reviews the tribunal's decision for misapplication of the law or adoption of a wrong principle." *Wexford Med Group v Cadillac*, 474 Mich 192, 201; 713 NW2d 734 (2006). Our decision is equally clear because petitioner never moved to amend his petition. Petitioner cites the following portion of the MTT's order granting respondent's motion for abeyance as support:

> Petitioner has had an opportunity to amend his pleadings and Petitioner has currently failed to timely exercise that "right" or demonstrate why he should be entitled to an extended opportunity to exercise that "right."

Respondent's motion for abeyance came after the referee's proposed order. That order granted summary disposition to respondent and rejected petitioner's claim that his tax liability was discharged by the Florida bankruptcy court. The referee's proposed order stated that the viability of an amendment of petitioner's pleading at that point was poor because, as a matter of

law, petitioner had stated no other claim and no amendment could change the fact that the SBT was nondischargeable by law. The referee was expressing the futility of amendment at that point. See *Tierney v Univ of Mich Regents*, 257 Mich App 681, 687-688; 669 NW2d 575 (2003).[4] Still, the proposed order advised petitioner of his right to amend under MCR 2.116(I)(5), under which a party against whom judgment is entered under MCR 2.116(C)(8) "shall [be] give[n] . . . an opportunity to amend [his or her] pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." The referee did not preclude the filing of a motion to amend. After the referee released his proposed order, respondent moved to hold in abeyance petitioner's first set of interrogatories and requests for production of documents. The motion did not mention amendment of the pleadings. Petitioner, however, referred to the issue of his "right to amend the petition" in his response to respondent's motion for abeyance. The MTT addressed this issue in its order granting respondent's motion for abeyance:

> 3. Although MCR 2.116(I)(5) does require the Tribunal to provide the parties with an opportunity to amend their pleadings, Petitioner has not filed any motion to amend or amended pleadings since the filing of Respondent's January 11, 2012, Motion for Summary Disposition, the Tribunal's April 17, 2012, Proposed Order granting that Motion and the filing of Petitioner's May 7, 2012, exceptions to that Order. In that regard, Petitioner has had an opportunity to amend his pleadings and Petitioner has currently failed to timely exercise that "right" or demonstrate why he should be entitled to an extended opportunity to exercise that "right."

---

[4] "Leave to amend should be denied only for particularized reasons, such as undue delay, bad faith, or dilatory motive on the movant's part, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or where amendment would be futile." *Tierney*, 257 Mich App at 687-688 (citation and quotation marks omitted).

While that order might have implied to petitioner that he was precluded from subsequently filing a motion to amend, the MTT clarified that order later when it addressed petitioner's motion for reconsideration:

> Furthermore, the Tribunal finds that the August 3, 2012 Order does not stand for the proposition that Petitioner *cannot* amend his pleadings, but rather, that Petitioner has failed to demonstrate that an amendment would be justified.

The MTT correctly applied MCR 2.116(I)(5). MCR 2.116(I)(5) only states that the court shall provide the *opportunity* for amendments. The rule does not refer to a limitations period. However, MCR 2.116(I)(5) does refer to the amendment procedure in MCR 2.118 which provides that "[a] party may amend a pleading once as a matter of course within 14 days after being served with a responsive pleading . . . ." MCR 2.118(A)(1). Respondent filed its answer to petitioner's petition on December 8, 2012. Approximately nine months later, when the MTT issued its order granting abeyance, petitioner had still not filed an amendment. While MCR 2.116(I)(5) mandates "the court shall give the parties an opportunity to amend," according to MCR 2.118(A)(2), after 14 days the right becomes discretionary:

> Except as provided in subrule (A)(1), a party *may* amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires. [Emphasis added.][5]

There was no error in the MTT's application of MCR 2.116(I)(5) to the facts of this case.

### III. PETITIONER'S RIGHT TO DISCOVERY

Petitioner next argues he was promised a later opportunity to conduct discovery by the MTT, but did not receive it. We find no merit in this argument. In order to

properly preserve an issue for appeal, it must be "raised before, and addressed and decided by, the trial court." *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005). Petitioner's motion for reconsideration after the MTT ordered that discovery be closed only addressed the issue of petitioner's right to amend the pleadings. The discovery issue was abandoned. It was not addressed by the MTT and is, therefore, not preserved for appellate review. However, this Court "may review an unpreserved issue if it presents a question of law and all the facts necessary for its resolution are before the Court." *Macatawa Bank v Wipperfurth*, 294 Mich App 617, 619; 822 NW2d 237 (2011). Sufficient facts are present here to discuss and decide the issues.

"We review a trial court's decision to grant or deny discovery for abuse of discretion." *Baker v Oakwood Hosp Corp*, 239 Mich App 461, 478; 608 NW2d 823 (2000). "An abuse of discretion standard is equally applicable with respect to discovery rulings by the MTT." *Wayne Co v Mich State Tax Comm*, 261 Mich App 174, 195; 682 NW2d 100 (2004). Petitioner relies on the following language from the MTT's August 3, 2012 order granting respondent's motion for abeyance in support of his position:

> [T]he Tribunal assigned the case to the above-noted Tribunal member for review and entry of a final *order* adopting or modifying the Proposed Order *or* an *order* vacating the Proposed Order and scheduling the case for hearing, which would include an opportunity for conducting discovery. [Emphasis added.]

Petitioner's reliance on this language is misplaced. It is clear that the MTT did not indicate that an opportunity for conducting discovery would be afforded if the MTT decided to adopt or modify the proposed order. To adopt

or modify the proposed order would substantially mean to affirm it, while vacating the order would be the opposite. The word "or" separates the two possibilities. See *People v Nicholson*, 297 Mich App 191, 199; 822 NW2d 284 (2012) ("The word 'or' is disjunctive and, accordingly, it indicates a choice between alternatives.") The MTT's order did not promise petitioner an opportunity for discovery in the event that it adopted or modified the proposed order. The opportunity to conduct discovery would have arisen only if the MTT vacated the proposed order and scheduled the case for a hearing. But the MTT chose to adopt the proposed order; hence, no discovery was needed.

Petitioner also contends he was denied procedural due process when he was not afforded the opportunity to conduct discovery. We disagree. Because this issue was also not preserved before the MTT, plain-error analysis is appropriate. *People v Carines*, 460 Mich 750, 764-765; 597 NW2d 130 (1999). To establish plain error, petitioner must show "(1) that an error occurred, (2) that the error was plain, and (3) that the plain error affected defendant's substantial rights." *People v Kowalski*, 489 Mich 488, 505; 803 NW2d 200 (2011). The third factor requires petitioner to show he was prejudiced by the error such that it affected the outcome of the proceedings before the MTT. *Carines*, 460 Mich at 763.

The MTT did not err when it granted respondent's motion for abeyance and ordered discovery closed until a final opinion was issued. First, there is no constitutional right to discovery in any judicial or quasi-judicial proceeding, including an administrative proceeding. *In re Del Rio*, 400 Mich 665, 687 n 7; 256 NW2d 727 (1977). Second, the MTT has authority to generate its own rules that "govern practice and procedure in all pro-

ceedings before the tribunal." Mich Admin Code, R
792.10201. See also MCL 205.732.

Petitioner cites no court rule or MTT rule with which
the MTT failed to comply. Petitioner argues that a
scheduling conference was required to take place, citing
Mich Admin Code, R 792.10247. However, Mich Admin
Code, R 792.10247 concerns prehearing conferences
and provides that discovery is not permitted after the
prehearing conference.[5]

Second, petitioner fails to tell this Court how the
outcome of his MTT proceeding would have been dif-
ferent with discovery and how discovery would have
changed the fact that, as a matter of law, petitioner's
tax liability was not dischargeable in bankruptcy.

The MTT did not commit plain error or deny peti-
tioner procedural due process. Even if a prehearing
conference did not take place, petitioner had his oppor-
tunity to be heard on issues involving discovery by way
of his answer to respondent's motion for abeyance and
his subsequent motions for reconsideration.

### IV. PETITIONER'S TAX LIABILITY

The heart of petitioner's claim is found in the ques-
tion whether the SBT liability was discharged in bank-
ruptcy as a "non-excise tax." As was the case with our
review of petitioner's claimed right to amend his plead-
ings, our standard of review here is limited and clear.
"This Court's review of Tax Tribunal decisions in
nonproperty tax cases is limited to determining
whether the decision is authorized by law and whether
any factual findings are supported by competent, mate-

---

[5] "Discovery shall not be conducted after completion of the prehearing
conference, unless otherwise provided by the tribunal." Mich Admin
Code, R 792.10247(11).

rial, and substantial evidence on the whole record." *Toaz v Treasury Dep't*, 280 Mich App 457, 459; 760 NW2d 325 (2008) (citation and quotation marks omitted). "Issues involving the interpretation and application of statutes are reviewed de novo as questions of law." *Id.*

Both parties to this appeal agree that the issue presented is whether Michigan's former SBT was an excise tax. This is an issue of first impression for this Court. Under the United States bankruptcy code, certain excise taxes cannot be discharged in bankruptcy. 11 USC 523(a)(1)(A); 11 USC 507(a)(8)(E). This Court's determination of whether the SBT was an excise tax will answer the ultimate question of whether petitioner's liability for the SBT was discharged in his Florida bankruptcy case. If the SBT was not an excise tax, it was dischargeable in bankruptcy and the MTT erred by granting summary disposition in favor of respondent. On the other hand, if the SBT was an excise tax, it was not dischargeable in bankruptcy and the MTT's grant of summary disposition was proper.

### A. PETITIONER'S BANKRUPTCY

On November 3, 2010, petitioner, as an individual debtor, filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Florida. Petitioner checked under "Types of Priority Claims"[6] the "[t]axes and certain other debts owed to governmental units" box on his bankruptcy petition and listed Michigan business taxes and the Michigan Department of Treasury as creditors holding unsecured priority claims. Petitioner was ordered discharged from bankruptcy on August 3, 2011. The order of discharge

---

[6] Capitalization altered.

declared, "The discharge does not discharge a debtor from any debt under 11 U.S.C. § 523."

11 USC 523(a) states:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> > (1) for a tax or a customs duty–
> >
> > (A) of the kind and for the periods specified in section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed[.]

The bankruptcy court discharged petitioner under 11 USC 1141. Therefore, under § 523, if petitioner had debt for a tax or customs duty of the kind and for the periods specified in either 11 USC 507(a)(3) or (8), that debt was not discharged. Section 507(a) identifies the priority order for claims and expenses. Section 507(a)(3) concerns unsecured claims under 11 USC 502(f). Section 502(f) applies to involuntary cases of bankruptcy whereas petitioner's petition for bankruptcy was filed voluntarily. Section 507(a)(8) concerns unsecured claims of governmental units, including certain excise taxes.

Respondent asserts that its SBT claim against petitioner fits the description of an excise tax under 11 USC 507(a)(8)(E)(i). Section 507(a)(8) refers to

> allowed unsecured claims of governmental units, only to the extent that such claims are for–
>
> > \* \* \*
>
> > (E) an excise tax on–
> >
> > (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition[.]

In this case, petitioner filed for bankruptcy on November 3, 2010, and the return for the 2007 tax year, which respondent claims petitioner is liable for, would have been due in 2008. Petitioner does not dispute that the year 2008 is within the three years of his 2010 bankruptcy filing. There is still, however, the remaining question of whether petitioner's SBT liability was for an excise tax.

### B. EXCISE TAXES

Petitioner and respondent disagree over the characterization of an excise tax. Petitioner urges this Court to hold that excise taxes are specific, generally indirect taxes imposed on transactions and consequently that the SBT was not an excise tax. Respondent, contrarily, requests this Court adopt the definition of an excise tax as a privilege tax imposed on a corporation for engaging in business activity in the state and to hold that the SBT was an excise tax. The MTT determined the SBT was "a tax upon the privilege of doing business that is measured by the 'adjusted tax base' of persons with business activity in this state." (Quotation marks and citation omitted; emphasis omitted.)

Petitioner argues that the MTT incorrectly relied on federal law to answer the question whether the SBT was an excise tax. He claims the tax nature of the SBT is a question of state law because there is no "federal or state statutory definition" of the term "excise tax." This argument is meritless given that petitioner's request for relief is cloaked in federal law. In order for this Court to determine whether the SBT was an excise tax dischargeable in a *federal* bankruptcy, it must first analyze what an excise tax is and second, determine whether the SBT met those characteristics. "Whether an obligation is a tax within the meaning of the Bank-

ruptcy Code is determined by federal law." *In re Fagan*, 465 BR 472, 476 (Bankr ED Mich, 2012) (citation and quotation marks omitted). "[T]he Supreme Court [has] held that when the language of the Bankruptcy Code is clear, the sole function of the courts is to enforce it according to its terms." *In re Nat'l Steel Corp*, 321 BR 901, 908 (Bankr ND Ill, 2005) (citation and quotation marks omitted). It is true however, that "[t]he term 'excise tax' is not defined in the Bankruptcy Code." *Fagan*, 465 BR at 477.

As a beginning then, it would be helpful to review how other panels of this Court and our Supreme Court have interpreted excise taxes. The case of *Dooley v Detroit*, 370 Mich 194; 121 NW2d 724 (1963), although it concerned the validity of Detroit's income tax ordinance, provided an extensive discussion on excise taxes. *Dooley* was also decided before the 1975 enactment of the Single Business Tax Act. "It is presumed that the Legislature knows of and intends to legislate in harmony with existing law." *State Bar of Mich v Galloway*, 124 Mich App 271, 277; 335 NW2d 475 (1983). Further, "[t]he Legislature is presumed to know of the existence of the common law when it acts." *Wold Architects & Engineers v Strat*, 474 Mich 223, 234; 713 NW2d 750 (2006).

In *Dooley* the Supreme Court concluded that Detroit's tax on income was a proper excise tax. *Dooley*, 370 Mich at 201. At the time of *Dooley* an excise tax was known to be "variously defined, sometimes in very general language and sometimes in language more specific." *Id.* at 205. The Supreme Court turned to treatises for elaboration, stating:

"Taxes fall naturally into three classes, namely, capitation or poll taxes, taxes on property, and excises. In general, it may be said that all taxes fall into one or the other of the

foregoing classes, any exaction which is clearly not a poll tax or a property tax being an excise." [*Dooley*, 370 Mich at 205, quoting 51 Am Jur, Taxation, § 24.]

And further stating:

"In its modern sense an excise tax is any tax which does not fall within the classification of a poll tax or a property tax, and embraces every form of burden not laid directly upon persons or property. The affirmative definitions of excise or excise tax found in the later decisions exhibit some variety in phraseology." [*Dooley*, 370 Mich at 205, quoting 51 Am Jur, Taxation, § 33. And further citing 16 McQuillin, Municipal Corporations (3rd ed), § 44.190.]

The *Dooley* Court also referred to other taxes the Court had previously found to be excise taxes. In a line of decisions, the Court had held Michigan's corporate franchise tax "was an excise tax on the franchise to do business as a corporation within the State." *Dooley*, 370 Mich at 205-206.[7] In making that determination the Supreme Court had relied on what it described as the "broad definition of an excise," which was "a tax imposed upon the performance of an act, the engaging in an occupation, or the enjoyment of a privilege." *Id*. at 206 (citation and quotation marks omitted). The *Dooley* Court also concluded the Detroit tax on income was an excise tax because it was not a capitation tax[8] or a poll tax. *Id*. The characteristics of the Detroit tax were that

---

[7] While not dispositive, it is worth knowing that when enacted, the SBT replaced multiple other taxes, including the corporate income tax and the corporate franchise tax. House Fiscal Agency, *Background and History: Michigan's Single Business Tax* (November 2003), p 7. See also *Gillette Co v Department of Treasury*, 198 Mich App 303, 311 n 7; 497 NW2d 595 (1993).

[8] A capitation tax is a direct tax on income. "No Capitation, or other direct, Tax shall be laid, unless in the Proportion to the Census of Enumeration herein before directed to be taken." US Const, art I, § 9. See also *Wikman v Novi*, 413 Mich 617, 680 n 53; 322 NW2d 103 (1982) (LEVIN, J., dissenting).

it imposed a tax "upon net income from the performance of labor or the rendition of services" and on the "use of capital . . . ." *Id.*

Later, in *Continental Motors Corp v Muskegon Twp*, 376 Mich 170, 178; 135 NW2d 908 (1965), the Supreme Court explained the distinction between the ad valorem tax and the excise tax. At issue in *Continental Motors* were corporate taxes paid on the assessed value of personal property in possession of the plaintiff under 1959 PA 266. *Continental Motors*, 376 Mich at 174-175. In *Continental Motors*, an "excise tax" was referred to as a specific tax imposed "upon the privilege of possession and use," whereas an "ad valorem tax" was imposed on the property itself. *Id.* at 177, 181. The Supreme Court also named Michigan's corporate franchise tax, sales tax, use tax, and tax on possessory rights to use another's tax-exempt property as examples of excise taxes. *Id.* at 180. Ultimately, the Court in *Continental Motors* held 1959 PA 266 unconstitutional under the title-object clause of Michigan's 1908 Constitution, reasoning that the public act amended the general property tax law so as to be under the guise of an ad valorem tax, when in actuality it operated as an excise tax. *Id.* at 177-178, 181. The plaintiff's possession and use of the personal property was a privilege, and a tax on the property in its possession would have been a tax on the privilege and, therefore, an excise tax. By contrast, a tax on the property itself would have been an ad valorem tax.

The federal courts have also had an opportunity to define and explain the nature of excise taxes. Petitioner in the instant case chose to appeal in the MTT and subsequently in this Court. Other litigants took the route of appealing in the bankruptcy court and subsequently in the federal circuit courts. In this case, the

hearing referee identified the bankruptcy court as an alternative forum in which petitioner could have sought relief and recognized that the bankruptcy court was "better suited to interpret its own orders and controlling case law." Respondent and the MTT cite *In re Quiroz*, 450 BR 699 (Bankr ED Mich, 2011), as an illustration of how the federal courts have dealt with similar issues. *Quiroz* did have similar facts, but in that case the parties' focus was on whether the SBT was an excise tax "on a transaction" as required for discharge under 11 USC 507(a)(8)(E)(i). *Quiroz*, 450 BR at 700. The nature of the SBT as an excise tax was apparently conceded, and the *Quiroz* court concentrated on the meaning of the term "transaction." *Id.* at 701-702. The *Quiroz* court turned to the case of *In re Nat'l Steel Corp*, 321 BR 901, and its interpretation of the apportionment character of the Texas franchise tax to explain "transaction" in the context of an excise tax. *Quiroz*, 450 BR at 702. The *Quiroz* court concluded the SBT was an excise tax on a transaction because it taxed the "transaction consisting of the act of doing business in the State of Michigan," which was similar to the type of transaction taxed by the Texas franchise tax. *Id.* The MTT followed the logic presented in *Quiroz* regarding the similarities in the apportionment provisions between the Texas franchise tax and the SBT and concluded the SBT was an excise tax as well. The *Quiroz* case, while factually identical to the instant one, misses the analytical mark of the instant case's significance. The question here is preliminary to that of *Quiroz*, namely, is the SBT an excise tax. To that end, *In re Fagan*, 465 BR 472, is more instructive.

In *Fagan*, the debtor, a corporate officer, claimed that the Michigan Department of Treasury continued to collect fuel taxes on the corporation when the tax liability was discharged in the debtor's Chapter 7 bank-

ruptcy. *Fagan*, 465 BR at 473. The department, in a motion to dismiss, argued that the fuel taxes were excepted from discharge under 11 USC 523(a)(1)(A) of the bankruptcy code because they were excise taxes under 11 USC 507(a)(8)(E). *Fagan*, 465 BR at 474. On an issue of first impression, the Bankruptcy Court for the Eastern District of Michigan analyzed the fuel taxes to determine first, whether they were taxes under federal bankruptcy law; second, whether they were excise taxes; and third, whether they were excise taxes on a transaction. *Id.* at 474. While the federal district court's conclusions are not binding on this Court, the analysis of that court is helpful.

The first analytical step in *Fagan* was determining whether an obligation was a tax.[9] However, neither party in the present case questions whether the SBT was a tax under federal bankruptcy law, nor does either party argue that the SBT was something other than a tax. The second and third steps analyze whether the tax is an excise or not.

*Fagan* recognized there are "two generally accepted definitions of 'excise tax[.]' " *Fagan*, 465 BR at 477. Not surprisingly, petitioner has adopted one and respondent the other. The first, adopted by respondent is from *Black's Law Dictionary*:

> "[a] tax imposed on the performance of an act, the engaging in an occupation, or the enjoyment of a privilege. A tax on the manufacture, sale, or use of goods or on the carrying on of an occupation or activity, or a tax on the transfer of

---

[9] There are "requirements that must be met in order for an obligation to the government to qualify for priority as a tax under federal bankruptcy law." *Nat'l Steel*, 321 BR at 907. The requirements have been formulated into a four-part test, under which the obligation must be "(1) an involuntary pecuniary burden; (2) imposed by the state legislature; (3) for a public purpose; (4) under the police or taxing power of the state." *Fagan*, 465 BR at 476 (citation and quotation marks omitted).

property. In current usage the term has been extended to include various license fees and practically every internal revenue tax except the income tax (*e.g.*, federal alcohol and tobacco excise taxes)[.]" [*Fagan*, 465 BR at 477, quoting *Black's Law Dictionary* (6th ed) (citation and quotation marks omitted; alterations in original; emphasis omitted).]

The second, adopted by petitioner, is from a general dictionary definition:

"an internal tax, duty or impost levied upon the manufacture, sale, or consumption of a commodity within a country and [usually] forming an indirect tax that falls on the ultimate consumer[;] c: any of various duties or fees levied on producers of excisable commodities[;] d: any of various taxes upon privileges (as of engaging in a particular trade or sport, transferring property, or engaging in business in a corporate capacity) that are often assessed in the form of a license or other fee[.]" [*Fagan*, 465 BR at 477, quoting *Webster's Third New International Dictionary* (citation and quotation marks omitted; alterations in original; emphasis omitted).]

Because both definitions have been employed to describe an excise tax, neither should be counted as "wrong." Instead, the SBT should be analyzed to determine whether it possessed the characteristics commonly attributed to excise taxes.

### C. THE SINGLE BUSINESS TAX ACT

When the *Fagan* court analyzed whether fuel taxes were excise under 11 USC 507(a)(8)(E), it first looked to the preface of the act that imposed the fuel taxes to ascertain the act's purpose. The relevant act here, the Single Business Tax Act, provided that it was an act

to provide for the imposition, levy, computation, collection, assessment and enforcement, by lien or otherwise, of taxes on certain commercial, business, and financial activities; to

prescribe the manner and times of making certain reports and paying taxes; to prescribe the powers and duties of public officers and state departments; to permit the inspection of records of taxpayers; to provide for interest and penalties on unpaid taxes; to provide exemptions, credits, and refunds; to provide penalties; to provide for the disposition of funds; to provide for the interrelation of this act with other acts; and to provide an appropriation. [1975 PA 228, title.]

"[T]he Single Business Tax Act was enacted to provide for a tax on financial activities beginning January 1, 1976." *Comerica Bank-Detroit v Dep't of Treasury*, 194 Mich App 77, 91; 486 NW2d 338 (1992) (citations omitted). Decisions of the United States Supreme Court "agree that the purpose of the particular enactment is the controlling factor." *In re Mansfield Tire & Rubber Co*, 942 F2d 1055, 1060 (CA 6, 1991) (citation and quotation marks omitted).[10]

In Michigan, the rationale for adopting the SBT (a modified [value-added tax] VAT) stemmed from three main points. The first is the benefits received principle: because all businesses benefit from government services, all businesses should remit a business tax. The second is that whereas corporate income taxes are levied only on corporations, VATs are levied on all types of businesses (including sole proprietorships, partnerships, and limited liability companies) regardless of organizational structure. The third point is revenue stability: the base of VATs, which consists mainly of compensation, is broad and fairly stable.[11]

---

[10] See *United States v New York*, 315 US 510, 516-517; 62 S Ct 712; 86 L Ed 998 (1942); *Meilink v California Unemployment Reserves Comm*, 314 US 564; 62 S Ct 389; 86 L Ed 458 (1942); *United States v Childs*, 266 US 304; 45 S Ct 110; 69 L Ed 299 (1924); *New York v Jersawit*, 263 US 493, 496; 44 S Ct 167; 68 L Ed 405 (1924).

[11] House Fiscal Agency, *Background and History: Michigan's Single Business Tax* (November 2003), p 37. "Value added taxes are based on the economic activity or the value that businesses add to the production of

Other panels of this Court have analyzed the purpose and process of the SBT. Soon after the SBT was enacted its constitutionality was challenged in *Stockler v Dep't of Treasury*, 75 Mich App 640; 255 NW2d 718 (1977). In addition to upholding the constitutionality of the act, the *Stockler* Court determined that the SBT was not an income tax.[12] *Id.* at 651-652. Section 31 of the Single Business Tax Act provided that the tax levied and imposed under the act was imposed on "the privilege of doing business and not upon income." Former MCL 208.31(3). The Court explained that the SBT "taxes what one has added to the economy in contrast to an income tax which taxes what one has derived from the economy." *Stockler*, 75 Mich App at 643.[13] The *Stockler* Court also determined that the SBT was a specific tax. *Id.* at 652. Indeed, by its own terms the SBT provided that it "imposed a specific tax upon the adjusted tax base of every person with business activity in this state . . . ." Former MCL 208.31(1).

Later in *Fluor Enterprises, Inc v Dep't of Treasury*, 265 Mich App 711, 715; 697 NW2d 539 (2005), aff'd in part and rev'd in part on other grounds 477 Mich 170 (2007), the SBT was determined to be a value-added tax, which is a tax imposed on "economic activity itself

---

goods and services. The tax base is final sales less the cost of goods sold or the cost of materials used as inputs." *Id.*

[12] "The appellate courts of this state have rejected the theory that the single business tax is a tax upon income." *Gillette Co v Dep't of Treasury*, 198 Mich App 303, 309; 497 NW2d 595 (1993) citing *Trinova Corp v Dep't of Treasury*, 433 Mich 141, 149; 445 NW2d 428 (1989), aff'd 498 US 358 (1991); *Mobil Oil Corp v Dep't of Treasury*, 422 Mich 473, 493-495; 373 NW2d 730 (1985); *Town & Country Dodge, Inc v Dep't of Treasury*, 152 Mich App 748, 755; 394 NW2d 472 (1986); *Wismer & Becker Contracting Engineers v Dep't of Treasury*, 146 Mich App 690, 696; 382 NW2d 505 (1985).

[13] See also *Columbia Assoc, LP v Dep't of Treasury*, 250 Mich App 656, 666-667; 649 NW2d 760 (2002).

and can be described in two ways: as a tax on the economic actor's use of the scarce resources of society, or as a tax on the value the economic actor adds to the economy." (Citation and quotation marks omitted.) That analysis was affirmed in *Ammex, Inc v Dep't of Treasury*, 273 Mich App 623, 629; 732 NW2d 116 (2007). This Court has recognized the nature of the SBT as a value-added tax that measured " 'the increase in the value of goods and services brought about by whatever a business does to them between the time of purchase and the time of sale.' " *Cowen v Dep't of Treasury*, 204 Mich App 428, 432; 516 NW2d 511 (1994), quoting *Trinova Corp v Dep't of Treasury*, 433 Mich 141, 149; 445 NW2d 428 (1989), quoting Haughey, *The Economic Logic of the Single Business Tax*, 22 Wayne L Rev 1017, 1018 (1976).

Petitioner argues, although not specifically, that "value added" is synonymous with "ad valorem" and concludes that an excise tax is " 'practically any tax which is not an ad valorem tax.' " (Citation omitted.) First, petitioner's authority for the statement that an excise tax is any tax but an ad valorem tax is taken from *Callaway v Overland Park*, 211 Kan 646, 651; 508 P2d 902 (1973), and therefore, not precedent binding on this Court. Further, the *Callaway* case did not hold the SBT was an ad valorem tax. In fact, there is no case cited by petitioner finding the SBT was an ad valorem tax. Second, petitioner has not shown how the very specific meaning of ad valorem, which is almost always in relation to the taxation of personal property, is related to the SBT outside of his incorrect understanding of the term as the equivalent of value added.[14]

_____

[14] Most notably, ad valorem is used in our state's constitution: "The legislature shall provide for the uniform general ad valorem taxation of real and tangible personal property not exempt by law . . . . The legisla-

The SBT had the characteristics of an excise tax as defined under federal bankruptcy law. That definition of an excise tax is an assessment that taxes the "enjoyment of a privilege" or "the carrying on of an occupation or activity," both of which describe the purposes of the SBT. *Fagan*, 465 BR at 477 (citations and quotation marks omitted; emphasis omitted). The SBT was a tax on the privilege of doing business in the state, *Stockler*, 75 Mich App at 651, and focused "on taxing the economic activity itself rather than the goods." *Ammex*, 273 Mich App at 631. See also former MCL 208.31(3). The United States Supreme Court did add the caveat that the SBT was not a tax on "business activity" per se, but rather, as the statute read, a tax " *'upon the adjusted tax base* of every person *with business activity in this state* which is allocated or apportioned to this state.' " *Trinova Corp v Mich Dep't of Treasury*, 498 US 358, 374; 111 S Ct 818; 112 L Ed 2d 884 (1991), quoting former MCL 208.31(1). The MTT likened the apportioned nature of the SBT to the Texas franchise tax, which was found to be an excise tax, and cited *Nat'l Steel*, 321 BR 901, in support of the SBT also being an excise tax. Petitioner takes issue with that analogy and asserts that "[t]he fact that the SBT is an apportioned tax further distinguishes it from an excise tax." However, petitioner's assertion is unsupported by detailed

ture may provide for alternative means of taxation of designated real and tangible personal property in lieu of general ad valorem taxation. Every tax other than the general ad valorem property tax shall be uniform upon the class or classes on which it operates." Const 1963, art 9, § 3. See *Consumers Power Co v Muskegon*, 13 Mich App 334, 343; 164 NW2d 398 (1968) ("[A]d valorem taxes are to be levied upon the State equalized value of property."); *Shivel v Kent Co Treasurer*, 295 Mich 10, 18; 294 NW 78 (1940) ("Property taxes may be either specific or *ad valorem*, although they are almost invariably *ad valorem* and in some States the Constitution forbids property taxes other than *ad valorem*.") (citation and quotation marks omitted).

argument and cites no authority for its conclusion. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) (citation and quotation marks omitted).

The MTT's analogy of the SBT to the Texas franchise tax is sound. The Texas franchise tax was held to be an excise tax because it met accepted definitions and descriptions of an excise tax. *Nat'l Steel*, 321 BR at 909. The Texas franchise tax was "a tax on the value of the privilege to transact business in the state," *id.* at 910, and so was the SBT, former MCL 208.31(3). Further, the SBT was to be calculated "in lieu of all other privilege or franchise fees . . . ." Former MCL 208.22.

The final analytical step from *Fagan* is determining whether the SBT was an excise tax on a transaction as required by 11 USC 507(a)(8)(E)(i). *Fagan*, 465 BR at 478. Petitioner's argument against the SBT being an excise tax is that the SBT was a general business tax and that excise taxes are specific and related to specific activities. This argument fails for a number of reasons. First, the SBT was enacted with a specific purpose, namely to impose "taxes on *certain* commercial, business, and financial activities . . . ." 1975 PA 228, title (emphasis added). Second, as that quotation illustrates, the SBT was limited to specific activities, those being "financial activities." Third, the reasoning in *Quiroz*, which is helpful on this point, explained that "transactions are not limited to separate and distinct acts or specific taxable events." *Quiroz*, 450 BR at 701. *Nat'l Steel* elaborated this point, stating that an actual "se-

ries of transactions . . . are necessarily required in the carrying on of business." *Nat'l Steel*, 321 BR at 913. The taxing of financial activities implies the taxing of multiple transactions. The SBT was an excise tax on a transaction within the meaning of 11 USC 507(a)(8)(E)(i).

Petitioner disagrees with the state and federal analyses employed by the MTT to determine how to interpret Michigan's Single Business Tax Act. Petitioner asserts the proposed order, which was adopted by the MTT, purported to quote statements from the case of *New York City v Feiring*, 313 US 283; 61 S Ct 1028; 85 L Ed 1333 (1941), that did not actually exist and then erroneously relied on them. The proposed order stated, "Whether a particular obligation is a 'tax is a federal question and is not dependent upon the particular nomenclature used in a state's law.' *City of New York v Feiring*, 313 US 283, 285; 61 S Ct 1028, 1029 (1941)[.]" Petitioner is correct that the quoted material does not exist in *Feiring*. *Feiring* actually states:

> Whether the present obligation is a "tax" entitled to priority within the meaning of the statute is a federal question. Intended to be nation-wide in its application, nothing in the language of § 64 or its legislative history suggests that its incidence is to be controlled or varied by the particular characterization by local law or the state's demand. Hence we look to the terms and purposes of the Bankruptcy Act as establishing the criteria upon the basis of which the priority is to be allowed. [*Feiring*, 313 US at 285 (citations and quotation marks omitted).]

The proposed order and the actual quote from *Feiring* both communicate that federal law determines what is and is not a tax. Because the sentence purportedly quoted in the proposed order was an accurate paraphrase of *Feiring*, petitioner's complaint is reduced to

one of clerical error, a placement of quotation marks where there should have been none.

The second challenged statement in the proposed order purportedly quoting *Feiring* is as follows:

> Some courts have held that an income tax and a property tax are *not* excise taxes. *Id*, [sic] 673, citing, *Jenson v Henneford*, 185 Wash 209; 53 P2d 607, 610 (1936). On the other hand, the United States Supreme Court has held that an "excise tax" is ". . . practically any tax which is not an ad valorem tax . . . , imposed on the performance of an act, the engaging in an occupation or the enjoyment of a privilege. . . ." *City of New York v Feiring*, 313 US 283, 285; 61 S Ct 1028, 1029 (1941).

Petitioner is correct that the quoted language is not from *Feiring*. The language is instead from *Callaway*, 211 Kan at 651. This error does not, however, eviscerate the analytical soundness of the proposed order as a whole. Nor does it establish that the MTT ignored the common law. The 18-page proposed order cited a myriad of sources, the overwhelming majority of which were correctly cited and supportive of the order's conclusions. The MTT's decision to not accept a particular definition of "excise tax," that would have favored petitioner, is not evidence that the MTT completely ignored the common law on the subject of excise taxes.

### D. DERIVATIVE LIABILITY UNDER MCL 205.27a(5)

MCL 205.27a(5) permits the Department of Treasury to collect revenue from officers of limited liability companies. Under MCL 205.27a(5), "[t]he sum due for a liability may be assessed and collected under the related sections of this act." Petitioner never contends that he is not a corporate officer of Jefferson Beach

Properties.[15] He only challenges the type of liability due under the statute, arguing that since the liability did not arise from an excise tax, it was discharged in bankruptcy. Respondent avers, and the MTT agreed, that the officer liability is clearly for taxes due. Petitioner argues the liability is not a tax liability, but merely a derivative liability by which petitioner is held responsible for the debt of another.

The plain language of MCL 205.27a(5) provides that the liability is for taxes:

> If a ... limited liability company ... liable for taxes administered under this act fails for any reason to file the required returns or to pay the tax due, any of its officers ... is personally liable for the failure. ... The dissolution of a ... limited liability company ... does not discharge an officer's ... liability for a prior failure of the ... limited liability company ... to make a return or remit the tax due. The sum due for a liability may be assessed and collected under the related sections of this act. [MCL 205.27a(5), as amended by 2003 PA 23.]

"The words of a statute provide 'the most reliable evidence of [the Legislature's] intent . . . .' " *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999), quoting *United States v Turkette*, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981). The liability referred to in MCL 205.27a(5) must stem from the company's failure to have either (1) filed returns, or (2) paid taxes due. The failure in the instant case was Jefferson Beach Properties' failure to pay taxes due. Under the statute, the corporate officers became personally liable for the company's failure to pay taxes. The language of the statute clearly identifies the liabil-

---

[15] Respondent alleges petitioner "signed several tax filings, company statements, and checks in the payment of Jefferson Beach's tax liabilities."

ity "for taxes" and the failure "to pay taxes due" and does not use the ambiguous term "debt" that petitioner employs for his own manipulation. Petitioner's characterization of the liability as derivative did not change the nature of the liability for the payment of taxes.

Petitioner erroneously asserts his case is similar to that of *Livingstone v Dep't of Treasury*, 434 Mich 771; 456 NW2d 684 (1990). While petitioner attempts to analogize the derivative liability in *Livingstone* to the derivative liability he contends is present in his own case, the two cases are so distinguishable that any comparison is inappropriate. The Supreme Court's discussion in *Livingstone* related to derivative liability under the Use Tax Act, MCL 205.91 *et seq.*, not the Single Business Tax Act. Specifically, *Livingstone* concerned former MCL 205.96(3), which was different from the derivative-liability statute at issue here. Also, one of the central points in *Livingstone* was how the derivative liability of corporate officers was affected by the period of limitations provided in the Use Tax Act. *Livingstone*, 434 Mich at 795-798 (opinion by ARCHER, J.) *Livingstone* and the instant case are distinguishable to the point that comparison is not helpful and a misapplication of the Supreme Court's holdings in *Livingstone* would result.

### E. SUMMARY DISPOSITION

The proposed opinion and order granted respondent's motion for summary disposition under MCR 2.116(C)(8). The MTT's final opinion and judgment affirmed and adopted the proposed order. "This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion under

MCR 2.116(C)(8) tests the legal sufficiency of the complaint. *Id.* at 119. Only the pleadings are considered. MCR 2.116(G)(5).

A motion under MCR 2.116(C)(8) allows dismissal of a claim when "[t]he opposing party has failed to state a claim on which relief can be granted." Petitioner's pleadings only made one claim and it was that he was not liable for taxes under the Single Business Tax Act because those taxes were included in an earlier bankruptcy he had filed in the Southern District of Florida and were discharged by that bankruptcy. Respondent argued that the taxes at issue were excise taxes that were not dischargeable in bankruptcy proceedings. The MTT agreed with respondent. As a matter of law, an excise tax on a transaction is not dischargeable in a bankruptcy proceeding. 11 USC 507(a)(8)(E)(i). The order of discharge and final decree from the Southern District of Florida notified petitioner of this fact. The SBT was an excise tax on a transaction and, therefore, not dischargeable. Petitioner points to no other support adequate to sustain his claim that he is not liable for the taxes. The MTT had no ground to grant petitioner relief, and neither does this Court. Summary disposition was proper.

### F. JURISDICTION

Petitioner argues that the MTT lacked jurisdiction to grant summary disposition in favor of respondent as a matter of law. He contends that respondent had a burden to demonstrate it had jurisdiction to seek payment from petitioner after the liability was discharged from bankruptcy in Florida. This issue was not presented to the MTT and is, therefore, new on appeal. Issues not addressed by the trial court are not preserved for this Court's review. *Fast Air, Inc v Knight*, 235 Mich

App 541, 549; 599 NW2d 489 (1999). Further, the issue of jurisdiction was not identified in the petitioner's statement of questions involved. Issues must be raised in the petitioner's statement of questions involved in order to be properly presented for this Court's review. MCR 7.212(C)(5); *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 553; 730 NW2d 481 (2007).

### G. RETROACTIVE EFFECT OF 2014 PA 3

As part of the supplemental authority provided to this Court, petitioner has directed our attention to the case of *Shotwell v Dep't of Treasury*, 305 Mich App 360; 853 NW2d 414 (2014), and its holding that 2014 PA 3 be given retroactive effect.

2014 PA 3 amended the language of MCL 205.27a(5). As amended, MCL 205.27a(5), refers its reader to the new Subsection (15), which defines the term "responsible person." In pertinent part, MCL 205.27a(15) reads:

> As used in subsections (5) and (6):

> \* \* \*

> (b) "Responsible person" means an officer, member, manager of a manager-managed limited liability company, or partner for the business *who controlled, supervised, or was responsible for the filing of returns or payment of any of the taxes* described in subsection (14) during the time period of default and who, during the time period of default, *willfully failed to file a return or pay the tax due* for any of the taxes described in subsection (14). . . .

> \* \* \*

> (d) "Willful" or "willfully" means the person knew or had reason to know of the obligation to file a return or pay

the tax, but intentionally or recklessly failed to file the return or pay the tax. [Emphasis added.]

Arguably, petitioner knew of his obligation to pay the SBT because he listed the Michigan Department of Treasury and Michigan business taxes as creditors on his bankruptcy petition in the Southern District of Florida.

Petitioner argues that these new changes to MCL 205.27a(5) support remand to the MTT. Petitioner argues that on remand: (1) respondent should be required to prove petitioner is a responsible person by showing petitioner willfully failed to file a return or pay a tax due, and (2) petitioner should be allowed to conduct more discovery to defend against the assertion that he is a responsible person.

We concur with petitioner only on the points that *Shotwell* did determine 2014 PA 3 was retroactive and that 2014 PA 3 amended portions of MCL 205.27a, the corporate officer liability statute. We do not agree, however, that petitioner's issues, as they are framed before the Court, are affected by the amendment of MCL 205.27a. Petitioner does not argue in this Court that he is not a corporate officer or that he is not responsible for the debts of the corporation. Petitioner concedes his capacity. His request on appeal is for this Court to interpret the liability, which he concedes he owes, as a derivative liability that was discharged in bankruptcy and not as an excise tax. The issues before this Court and the MTT focused on the nature of assessment, which was not affected by the recent amendment of MCL 205.27a.

Affirmed.

SHAPIRO, P.J., and MARKEY, J., concurred with STEPHENS, J.