*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 11, 2022

Plaintiff-Appellee,

v

No. 358864
Ottawa Circuit Court
LC No. 21-044436-FH

ARIC ELGIN SCHULTZ,

Defendant-Appellant.

Before: RICK, P.J., and BOONSTRA and O'BRIEN, JJ.

PER CURIAM.

Defendant, Aric Elgin Schultz, appeals by leave granted[1] his sentence following a guilty plea to operating while intoxicated, third or subsequent offense, MCL 257.625(9)(c) (OWI-3). The trial court sentenced defendant to 40 to 60 months' imprisonment. We affirm defendant's sentence, but remand for the trial court to assess credit for one day of time served for the reasons stated in this opinion.

This case stems from an incident in which defendant drove into a state park while intoxicated. Defendant entered a guilty plea to OWI-3 at his arraignment in the Ottawa Circuit Court. In exchange, the prosecution agreed to dismiss a count of second-offense driving while license suspended, MCL 257.904(3)(b), and a count of operating with an open intoxicant in his vehicle, MCL 257.624a.

At defendant's sentencing, the trial court acknowledged defendant's minimum sentence guidelines range of 10 to 23 months. The trial court also noted that defendant had not been charged as a fourth-offense habitual offender even though he was, "in fact, a fourth habitual offender," and indicated that the minimum sentencing guidelines range as a fourth-offense habitual offender would be 10 to 46 months. The trial court stated that "[t]his is the range that is appropriate for your misconduct" before imposing a minimum sentence of 40 months' imprisonment. The trial

---

[1] *People v Schultz*, unpublished order of the Court of Appeals, entered November 11, 2021 (Docket No. 358864).

court gave zero days' credit for jail or prison time served and noted that the sentence was to be served consecutively to remaining parole violations.

Defendant now argues that the trial court erred when it upwardly departed from the minimum sentencing guidelines range because it failed to consider (1) defendant's mitigating circumstances, (2) that the prior record variable (PRV) section already accounted for his prior offenses, and (3) that defendant was not charged as a habitual offender.

This Court reviews a trial court's fact-finding at sentencing for clear error. *People v Lampe*, 327 Mich App 104, 125-126; 933 NW2d 314 (2019). "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015), citing *United States v Booker*, 543 US 220, 261; 125 S Ct 738; 160 L Ed 2d 621 (2005). The reasonableness of a sentence is reviewed for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). This review, in turn, is to determine "whether the trial court abused its discretion by violating the principle of proportionality . . . ." *Id*. at 477. If a sentence is found to be unreasonable, this Court must remand for resentencing. *Lockridge*, 498 Mich at 392.

"The trial court's findings are clearly erroneous if, after we have reviewed the entire record, we are definitely and firmly convinced that it made a mistake." *People v Armstrong*, 305 Mich App 230, 242; 851 NW2d 856 (2014). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). Under an abuse-of-discretion standard, there is "no single correct outcome; rather, there will be more than one reasonable and principled outcome." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Therefore, as long as the trial court acted within a reasonable or principled outcome, this Court may defer to the trial court's judgment. *Id*.

"The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *Id*. at 263. This principle of proportionality has endured as the standard in which an upward-departing sentence is measured. " '[T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.' " *Steanhouse*, 500 Mich at 475, quoting *People v Milbourn*, 435 Mich 630, 661; 461 NW2d 1 (1990). However, a trial court must still take the sentencing guidelines into consideration when fashioning a sentence. *People v Dixon-Bey*, 321 Mich App 490, 524; 909 NW2d 458 (2017). "Because the guidelines embody the principle of proportionality and trial courts must consult them when sentencing, it follows that they continue to serve as a 'useful tool' or 'guideposts' for effectively combating disparity in sentencing." *Id*. at 524-525. Factors used to determine whether a sentence is proportionate to the offender's conduct include: "(1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight." *Id*. at 525 (citations omitted).

Defendant first argues that his sentence was disproportionate because the sentencing guidelines variables already accounted for prior offenses. Although PRVs do account for prior charges, they do not account for habitual-offender sentence enhancements. Defendant could have been, but ultimately was not, charged with a fourth-offense enhancement.

The trial court gave ample further reasoning for its departure from the actual minimum guidelines range. The trial court found that the act of operating while intoxicated was not only extremely serious in the objective sense, citing nationwide statistics, but also in this particular instance in which defendant drove across the state to a busy state park for a getaway, "simply disregarding the wellbeing of innocent[] men, women, and children." The trial court also noted that the guidelines do not reflect that defendant has seven convictions for the same misconduct. The trial court found that the guidelines do not adequately address defendant's continuing pattern of placing "unsuspecting members of the public at risk." The trial court stated that another factor not given enough weight by the guidelines was defendant's recidivism over a period of four decades combined with his seemingly nonchalant attitude toward drinking and driving, and then doing so without a valid license to drive. The trial court said: "[Y]ou are a grown man who simply chooses to drink alcohol and then drive because you had to get someplace . . . . When something bad happens, you simply say my bad and move on as if nothing else has happened." The trial court also found that the increasingly severe deterrent measures and attempts at rehabilitation had not worked so far and that these aspects were not considered under the guidelines. Also unaccounted for according to the trial court was defendant's repeated episodes of absconding from parole, as well as the fact that this offense occurred just 12 days after returning to parole. Thus, the trial court sufficiently addressed the *Dixon-Bey* factors when it articulated its reasoning for defendant's sentence.

Defendant next argues that the trial court erred when it used the habitual-offender sentencing grid as a guide because it essentially functioned as a "bait and switch," presumably meaning he only entered a guilty plea because he expected to receive a lighter sentence.

Defendant cites *People v Smith*, 319 Mich App 1; 900 NW2d 108 (2017), in support of his argument. In *Smith*, the trial court agreed at a *Cobbs*[2] hearing to sentence the defendant at the low end of the minimum guidelines range. *Id*. at 3. Under a *Cobbs* agreement, "a defendant who pleads guilty or nolo contendere *in reliance upon* a judge's preliminary evaluation with regard to an appropriate sentence has an absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation." *People v Cobbs*, 443 Mich 276, 284; 505 NW2d 208 (1993) (emphasis added).

The facts in *Smith* are distinguishable from this case. In this case, the trial court did not promise to issue a lighter sentence or sentence below the guidelines when it said that defendant would not be sentenced as a habitual offender. First, defendant entered his guilty plea with the only recorded incentive of dismissing the charges of driving with a suspended license and having an open intoxicant in the vehicle.[3] Nothing in the record indicates that the prosecution expressly agreed to not charge the habitual offense, although the trial court said that defendant "was not charged as a habitual offender and will not be sentenced as a habitual offender." Second, the trial court issued its statement only after defendant indicated that he would be entering a guilty plea. Although defendant may have reasonably expected to be sentenced without the effect of a habitual-

---

[2] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

[3] The plea offer on the probable cause summary stated: "If [defendant] pleads guilty at arraignment to OWI 3rd at C.C. Arraignment, PA dismisses DWLS 2nd and Open Intox."

offender status, he also could reasonably expect, given his criminal history of five felony convictions, 13 misdemeanor convictions, and more specifically, seven prior OWI convictions, that his minimum sentence would somehow be more severe. Third, defendant's maximum possible sentence remained 60 months, which is the statutory maximum sentence for OWI-3 without any habitual-offender enhancements, and the Michigan Department of Corrections (MDOC) recommended a sentence of 18 to 60 months, therefore, a minimum of 40 months was well within the range of what defendant should have expected to receive as a minimum sentence. MCL 777.12f.

The trial court's statement was not rendered false just because the trial court thought to use what would have been defendant's minimum range as a habitual offender as its own guide in fashioning an upward-departing sentence. The key difference is that the trial court would not have had to justify a 40-month minimum had the prosecution in fact charged the habitual-offender status. See MCL 769.34(10); *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016). Further, it is worth noting that this argument may not have even been raised had the trial court not mentioned that the sentence it was imposing was congruous with what would have been defendant's minimum as a fourth-offense habitual offender. The trial court did not abuse its discretion because it justified the upward departure and did not make nor break any sentencing promises.

Defendant also argues that it was clear error to not find any factors in favor of defendant, such as that he graduated high school and had a good employment history. Defendant cites no Michigan law directly in support of his specific assertion that these "should have been meaningfully factored in." In Michigan, rather, a trial court need not articulate mitigating factors at sentencing. *People v Bailey*, 330 Mich App 41, 63-64; 944 NW2d 370 (2019). In *Bailey*, this Court stated that, "contrary to [the defendant's] suggestion, trial courts are not required to expressly or explicitly consider mitigating factors at sentencing." *Id*.

In this case, the trial court simply stated that it "finds no mitigating factors." Although this Court would have to engage in speculation in order to determine exactly why the trial court found none, the reasons are irrelevant because the trial court was not required to state them on the record.

The trial court's principled approach to determining defendant's sentence was just one of several means possible, and it resulted in a sentence that was reasonable and proportionate to defendant's offense. Therefore, the trial court did not abuse its discretion when it imposed the minimum sentence of 40 months' imprisonment.

Defendant next argues that the trial court erred when it did not give defendant credit for time served before being held on a parole violation detainer.

The issue of credit for time served in prison was not raised, addressed, nor decided at the circuit court. Therefore, this issue is unpreserved. See *Henderson v Mich Dep't of Treasury*, 307 Mich App 1, 29; 858 NW2d 733 (2014). When an issue is unpreserved, this Court reviews the record for plain or obvious error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

MCL 769.11b governs credit for time served before sentencing. MCL 769.11b states:

Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing.

Further, in *People v Allen*, 507 Mich 597, 617; 968 NW2d 532 (2021), our Supreme Court held that "a parolee is entitled to jail credit under MCL 769.11b for time spent in jail after arrest for a new offense when the MDOC does not file a parole detainer against that parolee." Not affording this credit is plain error. *Id*.

In this case, defendant was arrested for this charge and lodged in the Ottawa County Jail on the day of the offense. He posted bond the following day. The MDOC arrested and lodged defendant as a parole violator almost three months later. The parties agree that defendant should have been given credit for one day he served in jail upon arrest because that day was served before the MDOC issued its parole detainer. At defendant's sentencing, however, the trial court issued zero days' credit. This was plain error and must be addressed on remand.

This Court affirms defendant's prison term but remands for the trial court to issue credit for time defendant served on account of this case. We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien