**S T A T E   O F   M I C H I G A N**
**C O U R T   O F   A P P E A L S**

ERIC COLTHURST,

        Plaintiff-Appellee,

v

DENNIS FREDERICK BRYAN, TERRY
MICHAEL SIEDLAK, FRED IMM, JASON
DEAN IMM, THOMAS K. KISSEL, JOHN
FRANCIS TETREAULT, DONNA RAMSEY-
BLACK, also known as DONNA RAMSEY
BLACK,

        Defendants/Third-Party Plaintiffs-
        Appellants,

and

MARGUERITE DLAMATER SKEELS, also
known as MARGUERITE DLAMTER SKEELS,

        Defendant/Third-Party Plaintiff,

and

TOWNSHIP OF CAMBRIDGE,

        Defendant/Third-Party Defendant-
        Appellee,

and

LENAWEE COUNTY ROAD COMMISSION
and DEPARTMENT OF ENVIRONMENTAL
QUALITY, also known as MDEQ,

        Defendants,

and

UNPUBLISHED
June 14, 2016

No.  323539
Lenawee Circuit Court
LC No.  13-004774-CH

-1-

CLARA OSER, also known as CLARA ANN GUENTHER, PAUL GUENTHER and BARBARA JANNUZZI,

       Defendants/Third-Party Defendants/Cross-Plaintiffs,

and

LENAWEE COUNTY DRAIN COMMISSIONER, DOUGLAS BEERENS, DENISE BEERENS, ROBERT GEORGE PANZOFF, RAYMOND DARDZINSKI, BONNIE DARDZINSKI, CHARLES GAGNEAU and BETTY GAGNEAU, TRUSTEES OF THE CHARLES & BETTY GAGNEAU TRUST, RANDALL ROWLSON, GLENDA ROWLSON, RONALD R. STEELE, KATHY E. STEELE, CHRISTOPHER J. WILLIAMS, also known as CHRISTOPHER J. WILLIAMSON, CHARLES GAGNEAU, BETTY GAGNEAU, RICHARD GILBO, GAIL LYNN GILBO, DENNIS BRYAN and CHARLENE BRYAN, TRUSTEES OF THE BRYAN FAMILY TRUST, DANIEL PEDERSON, CARRIE PEDERSON, SUSAN ALDRICH, SHIRLEY L. KANE, STUART STELLAR, MARCUS WARREN, LISE WARREN, NICHOLAS KISSEL, THOMAS KISSEL, JOHN KISSEL, JR., GERY KISSEL, TIMOTHY W. ETUE, ANN MARIE ETUE, KENNETH POLLACK, GERALD BLANCHETTE, RICHARD FAUST, DONNA J. FAUST, SUSAN M. COLTHURST, NICHOLAS E. CLAPSADIE, JOAN CHANNELL, ANTHONY D. KOPAS, RUSSELL R. BROWN, SUSAN M. BROWN, JEFFREY R. FRASER, also known as JEFFREY B. FRASER, DANIELLE E. FRASER, JAMES B. ROOS and ARLENE L. ROOS, TRUSTEES OF THE JAMES B. & ARLENE L. ROOS TRUST, STANLEY G. DIROFF, ELLEN M. DIROFF, CLIFTON L. PHILLIPS, and BARBARA PHILLIPS,

       Third-Party Defendants,

and

-2-

JOHN J. BLANCHETTE, SR., FRANCINE
BLANCHETTE, also known as CHERYL
FRANCINE BLANCHETTE, also known as
FRANCES BLANCHETTE, JOSEPH J.
ORLANDO and MICHELE M. ORLANDO,

          Third-Party Defendants/Cross-
          Defendants.

Before:  JANSEN, P.J., and O'CONNELL and RIORDAN, JJ.

PER CURIAM.

Defendants/third-party plaintiffs-appellants (nongovernmental defendants)[1] appeal by leave granted[2] the order granting summary disposition to third-party defendants and dismissing the nongovernmental defendants' claim of prescriptive easement, and the order granting plaintiff's motion for partial summary disposition, reaffirming Elm Court as a public road end, and granting plaintiff's motion to dismiss the nongovernmental defendants' affirmative defense of prescriptive easement over Elm Court.  We affirm.

## I.  FACTUAL BACKGROUND

This case arises from a dispute regarding the nongovernmental defendants' activities involving Elm Court and Wamplers Lake in Cambridge Township, Michigan.  Elm Court is a 20 foot wide by 50 foot long right of way located on the shore of Wamplers Lake.  Plaintiff owns a cottage on the shore of Wamplers Lake.  Plaintiff filed a three-count complaint alleging (1) violation of the scope of the dedication of Elm Court in the First Addition to the Oak Shade Park subdivision plat (the plat),  (2) violation of public trust, and (3) seeking injunctive relief relating to the use of Elm Court.  The first amended complaint alleged that, in the summer, individual defendants used Elm Court to moor their boats and pontoons, erect docks, and install boat lifts. The complaint also alleged that individual defendants used the area "to store all or part of these things on Elm Court during the winter."  According to plaintiff, a private dock erected at the end of Elm Court has three to four pontoons and three boats moored at its location every summer, and the accompanying boat lifts with canopies block his view of Wamplers Lake.  The private dock was erected during the summer of 2012.  Plaintiff asserted that the erection of the private dock was outside of the scope of the dedication of the plat, and that it contravened relevant Michigan case law, as well as pertinent provisions of the natural resources and environmental

---

[1] In the trial court, defendants/third-party-plaintiffs were referred to as the "nongovernmental defendants" to distinguish them from governmental entities that were also parties.

[2] *Colthurst v Bryan*, unpublished order of the Court of Appeals, entered March 31, 2015 (Docket No. 323539).

-3-

protection act, MCL 324.30101 *et seq.* (the Act). The nongovernmental defendants filed an answer contending that Elm Court was not a road end, as well as an accompanying motion for summary disposition on the basis that plaintiff lacked standing to assert his claims. They admitted to seasonal use of the dock for the last 50 to 75 years.

Plaintiff filed a motion for partial summary disposition pursuant to MCR 2.116(C)(10), arguing, as relevant to this appeal, that factual issues did not exist with regard to whether Elm Court was a "public road end" and a "public road" as defined in MCL 324.30111b(6)(b) and (c).[3] As relevant to this appeal, plaintiff argued that an abundance of Michigan authority governed the permissible use of a public road that ends at the shore of an inland lake or stream. The nongovernmental defendants did not file a response to plaintiff's motion for partial summary disposition, a fact confirmed by plaintiff on the record during the motion hearing. The trial court ruled that Elm Court was a public road end. The court reasoned as follows:

> I am going to follow the letter of the law. Looking at the cases that I have seen, I think it is pretty clear that this is, in fact, a public road end as that term is defined by MCL 324.30111b(6)(c); "the public does have access to and from the water accordingly, but, the public has no right to erect a non-public dock, or, to install boat lifts in order to moor boats permanently or overnight at this location" pursuant to the case law and to the statute. So, I am finding that Elm Court is a public road end, and, granting the Plaintiff's motion to that effect.

The nongovernmental defendants filed a motion to stay enforcement of the trial court's order limiting the seasonal mooring of boats and the erection of a private dock. The nongovernmental defendants subsequently filed their first amended answer and affirmative defense alleging prescriptive easement. They also filed a third-party complaint, alleging a prescriptive easement over Elm Court. Plaintiff moved to dismiss the nongovernmental defendants' affirmative defense of prescriptive easement, arguing, in relevant part, that Michigan law did not support their claim of prescriptive easement against a governmental entity. The nongovernmental defendants subsequently filed their first amended third-party complaint, alleging a private prescriptive easement to "include the right to moor seven boats on a seasonal basis on a 150 foot dock" for the nongovernmental defendants' exclusive use. Plaintiff filed a response to the nongovernmental defendants' motion to stay enforcement of the trial court's November 25, 2013 order, arguing, in relevant part, that the nongovernmental defendants had not satisfied the requirements of MCR 2.612(C)(1) to warrant relief from the trial court's prior judgment.

At the corresponding hearing, the trial court reaffirmed its previous ruling from November 2013, concluding that Elm Court was a "public road end" as defined by MCL 324.30111b(6)(c) before its June 2014 amendment. The trial court also granted plaintiff's motion to dismiss the nongovernmental defendants' affirmative defense of a prescriptive easement, as well as third-party defendant Cambridge Township's motion for summary

---

[3] MCL 324.30111b(6)'s language was subsequently revised, effective June 12, 2014, to omit the definition of "public road" and revise the definition of "public road end." 2014 PA 168.

disposition of the nongovernmental defendants' claim of prescriptive easement. The trial court entered the two orders from which the nongovernmental defendants appeal.

## II. PUBLIC ROAD END

The nongovernmental defendants argue that the court erred in concluding that Elm Court is a public road end and in granting summary disposition on this issue. They further argue that the court abused its discretion in denying the nongovernmental defendants' motion seeking relief from judgment pursuant to MCR 2.612(C). We disagree.

The trial court's ruling at issue on appeal followed the nongovernmental defendants' motion to stay enforcement of the trial court's November 25, 2013 order, in which the nongovernmental defendants relied on MCR 2.612(C)(1)(b) and (f). This Court reviews for an abuse of discretion a trial court's decision on a motion filed pursuant to MCR 2.612(C)(1). *Peterson v Auto-Owners Ins Co*, 274 Mich App 407, 412; 733 NW2d 413 (2007). To the extent that the trial court's ruling hinged on its interpretation of MCL 324.30111b, the interpretation and application of a statute is reviewed de novo. *Detroit Pub Sch v Conn*, 308 Mich App 234, 246; 863 NW2d 373 (2014).

The trial court's ruling at issue on appeal reaffirmed its earlier ruling from November 4, 2013, which was made in the context of plaintiff's motion for partial summary disposition pursuant to MCR 2.116(C)(10). A trial court's decision granting summary disposition is reviewed de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Id*. at 120 (citations omitted).]

At the time the trial court rendered its ruling on November 4, 2013, concluding that Elm Court was indeed a public road end as defined by the Act, the statute provided, in pertinent part, as follows:

> (1) A public road end shall not be used for any of the following unless a recorded deed, recorded easement, or other recorded dedication expressly provides otherwise:

> (a) Construction, installation, maintenance, or use of boat hoists or boat anchorage devices.

> (b) Mooring or docking of a vessel between 12 midnight and sunrise.

> (c) Any activity that obstructs ingress to or egress from the inland lake or stream.

(2) A public road end shall not be used for the construction, installation, maintenance, or use of a dock or wharf other than a single seasonal public dock or wharf that is authorized by the local unit of government, subject to any permit required under this part. This subsection does not prohibit any use that is expressly authorized by a recorded deed, recorded easement, or other recorded dedication. This subsection does not permit any use that exceeds the uses authorized by a recorded deed, recorded easement, other recorded dedication, or a court order.

\* \* \*

(6) As used in this section:

(a) "Local unit of government" means the county, township, city, or village with jurisdiction over a public road.

(b) "Public road" means a county road or a township, city, or village street that is open for use by the public.

(c) "Public road end" means the terminus of a public road at an inland lake or stream. [2012 PA 56.]

The Act was subsequently amended by 2014 PA 168, which took effect on June 12, 2014, and, as relevant to this appeal, subsection (6) was amended, and now provides, in pertinent part, as follows:

As used in this section:

(a) "Local unit of government" means a township, city, or village in which the public road end is located.

(b) "Public road end" means the terminus at an inland lake or stream of a road that is lawfully open for use by the public. [MCL 324.30111b(6).]

As a preliminary matter, it must be noted that once MCL 324.30111b was amended, the parties did not address the issue whether Elm Court met the new definition of "public road end" as set forth in the Act. Indeed, the trial court's ruling during the hearing on defendants' motion to stay enforcement of the November 25, 2013 order confirms that the trial court interpreted the earlier version of the statute. In other words, during the August 8, 2014 motion hearing, the trial court and the parties did not refer to the fact that the legislation had been amended. While the trial court did not consider the amended language of the statute, "this Court 'may review an unpreserved issue if it presents a question of law and all the facts necessary for its resolution are before the Court.' " *Henderson v Dep't of Treasury*, 307 Mich App 1, 8; 858 NW2d 733 (2014) (citation omitted).

In this Court's decision in *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 87-88; 662 NW2d 387 (2003), the plaintiff, Higgins Lake Property Owners Association (the property association), and several individual plaintiffs filed several actions that were

consolidated on appeal, asking for declaratory judgment concerning the permissible use of road ends as set forth in the relevant subdivision plats. Similar to the instant case, owners of back lots in the Higgins Lake subdivisions, as well as members of the general public, had used the road ends for "lounging, sunbathing, and picnicking, and [had] also moored boats and placed boat hoists at the road ends." *Id*. at 88. The plaintiffs asserted that the activities were outside of the scope of the property's plat dedication and moved the trial court to enjoin further use of the road ends. *Id*. Accordingly, the *Higgins Lake* Court was asked to consider "the scope of the public's right to use the ends of roads that terminate at the edge of Higgins Lake (road ends) in several subdivisions around the lake." *Id*. This required the *Higgins Lake* Court to consider the permissible use of the road ends as set forth by the governing subdivision plats that had dedicated the streets and alleys in the subdivision " 'to the use of the public.' " *Id*. This Court in *Higgins Lake* recognized "that the intent of the [subdivision] grantor controls the scope of the dedication." *Id*. The *Higgins Lake* Court also held that "the scope of a dedication of land to public use in a subdivision plat depends on the intent of the dedicator, and public ways that terminate at the water are presumed to have been intended to provide access to the water." *Id*. at 96.

Considering the scope of the use the public may make of the water where a public way terminates at the water's edge, the *Higgins Lake* Court restated the applicable law from this Court's prior decision in *Jacobs v Lyon Twp* (*After Remand*), 199 Mich App 667, 671-672; 502 NW2d 382 (1993):

> Publicly dedicated streets that terminate at the edge of navigable waters are generally deemed to provide public access to the water. The members of the public who are entitled to access to navigable waters have a right to use the surface of the water in a reasonable manner for such activities as boating, fishing, and swimming. An incident of the public's right of navigation is the right to anchor boats temporarily. The right of a municipality to build a wharf or dock at the end of a street terminating at the edge of navigable waters is based upon the presumption that the platter intended to give access to the water and permit the building of structures to aid in that access. *The extent to which the right of public access includes the right to erect a dock or boat hoists or the right to sunbathe and lounge at the road end depends on the scope of the dedication. The intent of the dedicator is to be determined from the language used in the dedication and the surrounding circumstances.* [*Higgins Lake*, 255 Mich App at 99 (citations and quotation marks omitted; emphasis added).]

This Court also recognized that (1) the determination of the dedicators' intent is a fact-specific inquiry, (2) the burden is on those seeking to establish the parameters of access to water at a public road end to "establish that anything other than mere access to the lake was intended," and (3) evidence of historical uses of public road ends after the dedication of a plat are not useful in the determination of the dedicators' intent. *Higgins Lake*, 255 Mich App at 101-103.

In ruling on the nongovernmental defendants' motion to stay enforcement of its earlier order, the trial court, after quoting its earlier bench ruling from November 4, 2013, gave the following ruling from the bench:

"A public road end means the terminus of a public road at an inland, lake, or, stream.["]

I have been out, pursuant to the request of the parties, and taken a look at Elm Court. I don't believe that there could be any other way to look at this area as being other than the terminus of a public road at an inland, lake, or, stream. Looking at the exhibits that were provided to the court by the parties, which I have gone through as well as reviewed the cases again. We did have presented by [plaintiff] Mr. Colthurst, exhibit one on his brief in support of his answer to Defendant's Motion to Stay Enforcement of the Order. It has another photograph of the Lenawee County----[aerial] photograph of the area in question. We also had contained in that same document exhibit eight; the Elm Street Court rules and regulations. In looking through those it does appear as if the understanding was that this is a road end that was off the end of Elm Street; between Elm Street and the lake front. But, I believe that all the evidence is pretty overwhelming that this is, in fact, a public road end. I don't know how this court could rule otherwise, or, reconsider the prior ruling of the court.

The trial court's ultimate legal conclusion on the issue of Elm Court being a public road end was correct, where the record evidence demonstrated that (1) Elm Court was a public road open for use by the public, MCL 324.30111b(6)(b), and (2) that it ended at an inland lake, MCL 324.30111b(6)(c). Similarly, the trial court's conclusion also met the revised requirements of MCL 324.30111b, effective June 12, 2014, which defines a public road end as "the terminus at an inland lake or stream of a road that is lawfully open for use by the public." MCL 324.30111b(6)(b).

Perhaps the most important evidence confirming that Elm Court was a public road open for use of the public that ended at an inland lake is the plat. The plat clearly provides that Elm Court is "hereby dedicated to the use of the public." Plaintiff also presented the trial court with responses to interrogatories and requests for production of documents from nongovernmental defendants Terry Michael Siedlak, Thomas K. Kissel, John Francis Tetreault, and Jason Dean Imm, confirming that as backlot owners in the subdivision, they all had access to Wamplers Lake by way of Elm Court. Further, the Elm Street Court Rules and Regulations clearly provide that "[a]ny person who uses the lake, dock, or easement is deemed to have knowledge of, and consented to be bound by these Rules and Regulations." The rules and regulations also provide that guests of property owners are permitted to use Wamplers Lake "only when invited and in the company of the property owner." These rules clearly contemplate members of the public using Elm Court. Moreover, while the nongovernmental defendants point to the fact that Elm Court is merely a grassy area of land, it is the use by the public which characterizes it as a public road end, rather than the character of its terrain. Accordingly, the trial court's conclusion that Elm Court was a public road end was correct because the record evidence confirmed that Elm Court was a public road open for use by the public. See MCL 324.30111b(6)(c).

The trial court also considered and rejected the nongovernmental defendants' argument, which they also advance on appeal, that the dedication of Elm Court was not properly accepted by any public authority, and that Elm Court is therefore not a public road. In rejecting this argument, the trial court correctly observed that MCL 560.255b(1) provides that 10 years after a

plat is first recorded, "land dedicated to the use of the public . . . shall be presumed to have been accepted on behalf of the public by the municipality within whose boundaries the land lies." MCL 560.255b(1). The trial court also observed that no showing had been made on the record that the dedication of the plat had not been accepted. In other words, while MCL 560.255b(2) provides a statutory framework for rebutting the presumption of acceptance by a municipality, on this record, the nongovernmental defendants made no evidentiary showing to rebut the presumption that the plat was validly accepted. See *Higgins Lake*, 255 Mich App at 116. Accordingly, the nongovernmental defendants' argument that the plat in this case was not validly accepted is unpersuasive.

The nongovernmental defendants also contend that the trial court did not properly consider the historical use of Elm Court in rendering its decision. In support of this argument, the nongovernmental defendants point to the June 6, 2014 letter of Lynn Pollack, presumably a resident who lives in close proximity to Elm Court, that Elm Court was intended to be a private, dedicated easement, rather than a public road end. They also point to multiple attachments to their February 19, 2014 third-party complaint, arguing that they too demonstrate that Elm Court's usage was intended to be exclusive and private. However, the record reflects that the trial court did indeed consider the evidence submitted by the parties, still ultimately concluding that Elm Court is a public road end. Further, *Higgins Lake* makes it clear that the intent of the plat grantors, as evidenced by the language of the plat itself, will govern in determining the scope of the plat. See *Higgins Lake*, 255 Mich App at 88, 96, 103.[4] Specifically, the *Higgins Lake* Court recognized that "in the absence of evidence that the historical uses of the road ends were contemporaneous with the [plat] dedication, the road-end activity occurring after the dedication are not helpful in determining the dedicators' intent." *Id*. at 103. Here, the nongovernmental defendants did not submit evidence creating a factual issue regarding the intent of the dedicators. Instead, the intent of the dedicators is plain from the language of the plat. Therefore, the intent of the plat grantors, as evidenced by the language of the plat, determines the scope of the plat in this case.

### III. PRESCRIPTIVE EASEMENT

The nongovernmental defendants argue that the court erred in (1) granting plaintiff's motion for summary disposition of the nongovernmental defendants' affirmative defense of prescriptive easement and (2) granting summary disposition against the nongovernmental defendants with regard to their claim of a prescriptive easement raised in the third-party complaint. We disagree.

---

[4] The nongovernmental defendants also contend that the trial court did not consider the language of the plat. However the trial court duly noted that it considered all of the exhibits submitted by the parties in this case, and a copy of the plat was provided to the trial court as part of the pleadings that were the impetus for the trial court's ruling on whether Elm Court was a public road end.

The trial court decided this issue in the context of plaintiff's motion seeking summary disposition of the nongovernmental defendants' affirmative defense of prescriptive easement pursuant to MCR 2.116(C)(8) and (10). Defendant Cambridge Township made an oral motion seeking summary disposition, pursuant to MCR 2.116(I), at the hearing on plaintiff's motion after plaintiff's motion was granted, specifically asserting that factual issues did not exist and the same legal issue warranted dismissal of the nongovernmental defendants' claims against third-party defendants. A trial court's decision granting summary disposition is reviewed de novo. *Maiden*, 461 Mich at 118. Where the trial court did not specify under what subrule summary disposition was granted, and where it looked beyond the pleadings in rendering its decision, "this Court will consider the motion granted pursuant to MCR 2.116(C)(10)." *DeHart v Joe Lunghamer Chevrolet, Inc*, 239 Mich App 181, 184; 607 NW2d 417 (1999). As set forth above:

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden*, 461 Mich at 120 (citations omitted).]

On appeal, a trial court's decision granting summary disposition pursuant to MCR 2.116(I)(1) is reviewed de novo. *Sobiecki v Dep't of Corrections*, 271 Mich App 139, 141; 721 NW2d 229 (2006). MCR 2.116(I)(1) provides, "If the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay." "Under MCR 2.116(I)(1), the trial court is affirmatively required to 'render judgment without delay' when 'the pleadings show that a party is entitled to judgment as a matter of law.' " *Sobiecki*, 271 Mich App at 141 (citation omitted). A trial court is permitted to grant summary disposition sua sponte pursuant to MCR 2.116(I)(1), as long as one of the two conditions in the rule is met. *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009).

An easement allows one to use the land of another for a specific purpose. *Heydon v MediaOne*, 275 Mich App 267, 270; 739 NW2d 373 (2007). "An easement by prescription results from the use of the property of another that is open, notorious, adverse, and continuous for a period of 15 years." *Id*. at 270-271. In *Higgins Lake*, this Court, citing *Kempf v Ellixson*, 69 Mich App 339; 244 NW 476 (1976), recognized that a public easement can be acquired by prescription under certain circumstances. *Higgins Lake*, 255 Mich App at 119. Observing that "mere use of property is insufficient to establish a public easement by prescription[,]" this Court cited with approval the following language from *Kempf*:

> We think it safe to say that unless there has been some action by representatives of the public, i.e. the government, a "public" easement cannot be established by prescription. Recreational use of an area by various individuals over a period of years is insufficient to establish a public easement.

* * *

We believe that establishment of public recreational rights by prescription requires at a minimum governmental action to facilitate and control recreational use. It does not appear that the public has established by prescription any recreation easement over the area in question. [*Id.* at 119-120, quoting *Kempf*, 69 Mich App at 343-344 (quotation marks omitted).]

Observing that the defendants in *Higgins Lake* sought a prescriptive easement over public road ends "solely on the recreational use of the road ends by various individuals over a period of years," the *Higgins Lake* Court reiterated that "mere use of the [subject] property is insufficient to establish[] a public easement by prescription." *Higgins Lake*, 255 Mich App at 120.

During the July 28, 2014 hearing, the attorney for the nongovernmental defendants acknowledged that there was no governmental action. Instead, defense counsel argued that no governmental entity ever accepted the road. The parties then presented arguments regarding whether the public road end was ever accepted by a government entity. During the August 8, 2014 hearing, the trial court observed that the nongovernmental defendants sought to advance a claim of a prescriptive easement in their amended pleadings. After noting the elements of a claim of prescriptive easement, the trial court recognized that a claim of a public prescriptive easement "requires, at a minimum, a governmental action to facilitate and control recreational use." Importantly, the trial court made the following observation:

The Defendant's [sic] and Third Party Plaintiff's [sic] in this case have admitted that there has been no governmental action which is required to establish a public easement. *In fact, none has been alleged as pointed out by Mr. Colthurst in his motion, and, it was admitted on the record by counsel* [*for defendants/third-party plaintiffs*]. There is no issue, legal or factual, on this matter, and, Plaintiff is therefore entitled to Summary Disposition on the Prescriptive Easement Claim. [Emphasis added.]

Notably, counsel for the nongovernmental defendants did not object to the trial court's conclusion that he admitted on the record the lack of governmental action to support a claim of a public prescriptive easement. Counsel for the nongovernmental defendants also did not assert the existence of a private prescriptive easement during the motion hearing. He stated that the court's decision "has decided all of the pending issues before this court." Later in the proceedings, the trial court, in ruling on Cambridge Township's motion for summary disposition of the nongovernmental defendants' claim of a prescriptive easement, again made the following observations:

I will rule at this time that all the prescriptive easement claims, because we don't have any kind of governmental action which is a necessary element, which has been admitted by Mr. Brooks on behalf of his clients, I will rule on all those claims at this time. Any claim diverted from that prescriptive easement claim then will be dismissed as well as the claim that you had brought against Mr. Colthurst.

When the trial court inquired of the nongovernmental defense counsel's position, counsel responded, in pertinent part, "I have no objection to the court considering that motion, and,

ruling on it pursuant to the law you've already cited." Accordingly, the trial court properly concluded that a public prescriptive easement did not exist over Elm Court because all parties acknowledged that there was no governmental action. See *Higgins Lake*, 255 Mich App at 119-120.

The nongovernmental defendants argue on appeal that the trial court applied the incorrect standard of law to their easement claim as they were asserting a private easement, not a public easement. A review of the lower court record reflects that the third-party complaint initially stated that the nongovernmental defendants asserted a claim for a "prescriptive easement." In support of their claim, the nongovernmental defendants stated that they had established a prescriptive easement by the construction and maintenance of a seawall for exclusive use, by erecting a no trespassing sign, by erecting a dock and mooring boats at the dock or on lifts adjacent to the docks, by establishing rules for the use of Elm Court, and by charging fees for maintenance of the area. After plaintiff filed his motion to dismiss the claim of prescriptive easement, the nongovernmental defendants filed an amended third-party complaint, specifically stating that they were asserting a "private recreational easement" for their exclusive benefit.

It is noteworthy that the nongovernmental defendants did not argue in the trial court that their claim was based on a private prescriptive easement theory, even after the trial court stated that they had essentially waived the elements of their claim of a public prescriptive easement. The trial court did not address and decide the issue of a private prescriptive easement, and defense counsel did not raise the issue during the relevant motion hearings. See *Henderson*, 307 Mich App at 7-8. In fact, defense counsel stated that the court had "decided all of the pending issues before this court," and stated that he had "no objection to the court considering" Cambridge Township's motion and "ruling on it pursuant to the law you've already cited." Under these circumstances, we decline to address the question of the existence of a private prescriptive easement because the facts necessary to the resolution of this issue were not presented in the trial court. See *id.* at 8. Accordingly, the trial court did not err in granting the motion for summary disposition of the nongovernmental defendants' affirmative defense of prescriptive easement and in granting the motion for summary disposition of the prescriptive easement claim raised in the third-party complaint.

IV. RETROACTIVITY OF MCL 324.20111b

The nongovernmental defendants argue that the Act retroactively deprived them of a vested right. We disagree.

For an issue to be properly preserved, it must be raised before, and considered and decided by, the trial court. *Henderson*, 307 Mich App at 7-8. The nongovernmental defendants did not raise this issue in the trial court. Accordingly it was not properly preserved for this Court's review. The issue whether a statutory amendment operates retroactively is a question of law that this Court reviews de novo. *Lafontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26, 34; 852 NW2d 78 (2014). However, where the nongovernmental defendants did not properly preserve this issue in the trial court, we review the matter for plain error affecting the nongovernmental defendants' substantial rights. *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 532; 866 NW2d 817 (2014).

In general terms, an amended statute will operate prospectively " 'unless the Legislature has expressly or impliedly indicated its intention to give it retrospective effect.' " *Aztec Air Serv, Inc v Dep't of Treasury*, 253 Mich App 227, 233; 654 NW2d 925 (2002) (citation omitted). In *LaFontaine Saline*, the Michigan Supreme Court set forth four guiding principles to consider in determining whether a law has retroactive effect.

> In determining whether a law has retroactive effect, we keep four principles in mind. First, we consider whether there is specific language providing for retroactive application. Second, in some situations, a statute is not regarded as operating retroactively merely because it relates to an antecedent event. Third, in determining retroactivity, we must keep in mind that retroactive laws impair vested rights acquired under existing laws or create new obligations or duties with respect to transactions or considerations already past. Finally, a remedial or procedural act not affecting vested rights may be given retroactive effect where the injury or claim is antecedent to the enactment of the statute. [*LaFontaine Saline*, 496 Mich at 38-39 (citations omitted).]

In *Gillette Commercial Operations North America & Subsidiaries v Dep't of Treasury*, 312 Mich App 394, 418; ___ NW2d ___ (2015), this Court recognized that concerns regarding the retroactive application of a statute stem from constitutional due-process requirements " 'that prevent retrospective laws from divesting rights to property or vested rights, or the impairment of contracts.' " (Citation omitted.)

> A vested right has been defined as an interest that the government is compelled to recognize and protect of which the holder could not be deprived without injustice. Nonetheless, when determining whether a right is vested, policy considerations, rather than inflexible definitions must control, and we must consider whether the holder possesses what amounts to be a title interest in the right asserted. [*Id*. (citation and quotation marks omitted).]

This Court recognized that "[a] vested right is a legal or equitable title to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exemption from a demand by another." *Id*. at 419. To amount to a vested right, one must have "more than a mere expectation" of the right on the basis of "an anticipated continuance of the present laws." *Id*.

In their brief on appeal, the nongovernmental defendants do not present a meaningful, coherent argument with regard to how they allege the trial court improperly retroactively applied the Act under the facts of this case. In any event, where the Act applies to the nongovernmental defendants' actions on Elm Court and Wamplers Lake that predated the enactment of the relevant amendments, the instant case presents a scenario where, "simply because a statute relates to an antecedent event, it is not necessarily regarded as operating retrospectively[.]" *Tobin v Providence Hosp*, 244 Mich App 626, 661; 624 NW2d 548 (2001). Further, the nongovernmental defendants do not present a developed, specific argument regarding how their rights to use Elm Court and the adjoining water of Wamplers Lake were "vested rights" that are somehow impaired by the retroactive application of the Act. See *LaFontaine Saline*, 496 Mich at 38-39; *Gillette Commercial Operations*, 312 Mich App at 418-419. Indeed, the state of the

-13-

law before the relevant amendments to the act, pursuant to *Higgins Lake* and predecessor cases relied on in that case, confirms that while the nongovernmental defendants had rights to access the surface of the water in a reasonable manner where Elm Court terminated at the water's edge, any rights to erect a private dock or boat hoists were limited, and the scope of the dedication of the plat controlled. See *Higgins Lake*, 255 Mich App at 99. Accordingly, under the circumstances of this case, the nongovernmental defendants have not made a persuasive showing that the Act was applied retroactively, or that their rights to use Elm Court and the adjoining water were vested rights.

Affirmed.


/s/ Kathleen Jansen
/s/ Peter D. O'Connell
/s/ Michael J. Riordan

-14-