*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TILLMAN INDUSTRIAL PROPERTIES, LLC, and
ROOSEVELT TILLMAN,

UNPUBLISHED
May 9, 2024

Plaintiffs-Appellants,

v

No. 361369
Kent Circuit Court
LC No. 13-008428-CZ

MERCANTILE BANK MORTGAGE COMPANY,
LLC, and MERCANTILE BANK CORPORATION,

Defendants-Appellees.

Before: FEENEY, P.J., and RICK and N. P. HOOD, JJ.

PER CURIAM.

In this dispute arising from the foreclosure of real property, plaintiffs, Tillman Industrial Properties, LLC, and Roosevelt Tillman, appeal by right the judgment in favor of defendants, Mercantile Bank Mortgage Company, LLC and Mercantile Bank Corporation (collectively Mercantile Bank), following a bench trial. On appeal, plaintiffs argue that the trial court erroneously held that they failed to establish disparate treatment claims under the Fair Housing Act (FHA), 42 USC 3601 *et seq.*, and the Equal Credit Opportunity Act (ECOA), 15 USC 1691 *et seq*. They also argue that the trial court erroneously relied on the affidavit of Mercantile Bank employee Traci Courter as substantive evidence at trial. Because we conclude that plaintiffs have not identified any error in the trial court's findings of fact or conclusions of law, we affirm.

## I. BACKGROUND

This case arises out of Tillman's allegations that Mercantile Bank treated him differently, and foreclosed on his property more aggressively, because of his race. Tillman, who identifies as Black, formerly worked as a general contractor and invested in real estate. He started a medical device company—MedBio—which he operated out of property on 630 South Division in Grand Rapids, Michigan. Tillman Industrial owned that property. Tillman Industrial financed its operations with a 2005 loan from Mercantile Bank. The promissory note associated with the loan had a maturity date of April 2010. Tillman sold MedBio in 2008, but MedBio continued to operate from Tillman Industrial's property on South Division.

There was evidence that, by January 2010, Tillman and his related entities owed Mercantile Bank about $2.5 million on several notes which were secured by various mortgages. There was evidence that all the mortgages were cross-collateralized. Tillman also personally guaranteed certain notes to Mercantile Bank. Tillman Industrial did not make the balloon payment on the promissory note associated with the 2005 loan when it came due in April 2010. There was evidence that Tillman had consistently been late on his payments for months. Nevertheless, the bank agreed to extend the due date for the note to February 2011.

In December 2010, Tillman asked Mercantile Bank to lend him $200,000 to purchase a residence at 1611 Beard Drive in Grand Rapids, Michigan. Mercantile Bank agreed to lend Tillman Industrial an additional $200,000 on its existing note if he secured it with a $400,000 mortgage on 1611 Beard Drive. Tillman agreed and closed on the house with an additional $250,000 of his own funds.

In late 2010, Tillman proposed selling the property on South Division to MedBio to cover his debts, but the deal fell through. And in September 2011, MedBio moved out of the building. The loss of MedBio as a tenant caused a serious interruption in Tillman's cash flow.

Mercantile Bank offered Tillman a forbearance agreement in early 2012. Under the proposed agreement, the bank would allow Tillman to make interest-only payments on his notes for six months. Tillman was already two months past due when the bank offered the plan. Tillman, however, did not negotiate with the bank. Tillman's loan officer transferred Tillman's portfolio to the bank's risk asset management group in March 2012. The bank's representative from that group, Courter, then notified Tillman and his entities that they were in default and took steps to foreclose.

Mercantile Bank sued to evict Tillman from 1611 Beard Drive, and Tillman counterclaimed in the district court. In April 2013, the district court transferred Tillman's counterclaims to the circuit court.

Tillman filed his second amended complaint in December 2013. Tillman claimed that Mercantile Bank decided to aggressively purge its commercial loan portfolio of minority business clients, which included plaintiffs. Tillman raised four claims. First, Tillman alleged on behalf of a class of Black borrowers that Mercantile Bank directly discriminated against Black borrowers (Count 1). Second, he alleged Mercantile Bank engaged in disparate treatment of Black borrowers (Count 2). Count 1 and Count 2 alleged violations of the FHA and ECOA. Third, plaintiffs alleged that Mercantile Bank fraudulently induced Tillman, on his own behalf and on behalf of his entities, to enter into commercial agreements that included "buried cross-collateralization, cross-guaranty and cross-default provisions" (Count 3). He claimed that the bank also fraudulently induced him to purchase his personal residence at 1611 Beard Drive through a $200,000 loan to Tillman Industrial, which was secured by a mortgage whose face value was $400,000. Tillman alleged that Mercantile Bank structured the transaction as a trap whereby the bank tricked Tillman into thinking that his personal payment of $250,000 was going toward the purchase of the home when in fact he was—in effect—paying down the debt that Tillman Industrial owed to the bank and improving the bank's collateral position at a time when the bank fully intended to foreclose against him. Finally, Tillman asserted a Truth in Lending Act Claim (Count 4).

Mercantile Bank moved for summary disposition on all four claims in January 2014. The trial court granted the motion as to Counts 3 and 4 under MCR 2.116(C)(7) and (8), but denied it as to Counts 1 and 2. The trial court denied Tillman's request for class certification in September 2015. After the trial court's decision on class certification, the parties engaged in years of discovery battles.

In July and August 2019, the parties each moved for summary disposition of the remaining claims under MCR 2.116(C)(10). In April 2020, the trial court entered its order granting in part Mercantile Bank's motion for summary disposition. The trial court determined that plaintiffs failed to identify any evidence that permitted an inference of intentional discrimination. The trial court opined that plaintiffs had presented evidence that satisfied the familiar burden-shifting approach for disparate treatment using circumstantial evidence. Accordingly, it granted Mercantile Bank's motion for summary disposition of Count 1, but only to the extent that plaintiffs relied on direct discrimination. The trial court stated that, as for Count 2, plaintiffs failed to present evidence that a facially neutral policy had a causal link with disparate impact. For that reason, it granted the bank's motion as to Count 2. The trial court stated that it would hold a trial on Count 1. The trial court held a bench trial on that claim over 17 days beginning in June 2021 and ending in December 2021.

The trial court entered its findings of fact and verdict in April 2022. The trial court stated that plaintiffs had to establish a prima facie case of discrimination under the burden-shifting approach; specifically, they had to show—as applicable to the two different statutes—that (1) they were members of a protected class; (2) they attempted to engage in a real estate transaction with, or obtain a loan from, Mercantile Bank and met all the relevant qualifications for doing so; (3) Mercantile Bank refused to transact business with them despite their qualifications; and (4) Mercantile Bank continued to engage in the same type of transaction with other parties with similar qualifications. The trial court concluded that plaintiffs failed to show that Mercantile Bank continued to engage in the same transactions with similarly situated borrowers who were white.

The trial court considered evidence regarding comparators David Budd and Bruce Helder, as well as comparators David Organek and Todd Oosting on behalf of Victory Club, LLC. It concluded that Mercantile Bank did not treat the comparators better than Tillman. The trial court agreed that Mercantile Bank held off on foreclosing against Helder but found that it did so because Helder, different from Tillman, had agreed to the terms of forbearance. As for Budd, Organek, and Oosting, the trial court found that they "received the same rough treatment from Mercantile that Tillman suffered." The trial court explained that Mercantile Bank placed Budd's companies in receivership and drove him into personal bankruptcy. It further explained that Mercantile Bank placed Victory Club, LLC in receivership, drove Organek into personal bankruptcy, and obtained payment in full from Oosting. The trial court did not accept Tillman's claim that Mercantile Bank treated him differently because Mercantile Bank did not afford him the opportunity to sell the property on 630 South Division and took his home. It explained that Tillman had the opportunity to sell the property on 630 South Division, but the sale fell through. It further explained that the mortgage on the home was the sine qua non for the $200,000 loan to Tillman Industrial, so it was unsurprising that the bank sold the property. Also, Budd did not lose his home because the bank did not have a cross-collateralization agreement that included the home, and Budd was able to protect it in bankruptcy. For all these reasons, the trial court concluded that Tillman failed to establish a prima facie case of discrimination.

The trial court also identified evidence that supported Mercantile Bank's claim that it had a legitimate business reason for foreclosing against Tillman and refusing to take further steps to help him. The trial court stated that Tillman was in default, refused a forbearance agreement, had no viable plan to repay, was chronically late on his payments, regularly overdrew bank accounts, failed to pay property taxes, cut off communications, and completely stopped making payments. The trial court opined that Tillman failed to present any evidence to refute or explain the "mountain of evidence" that Tillman violated every obligation that he had as a borrower. Tillman promised in his opening statement, the trial court observed, that there would be evidence of racial animus, but did not present any. The trial court agreed that a bank employee received an offensive e-mail with "despicable racist language," apparently authored by the father of the employee's friend, but found that the employee did not forward it to anyone else. As for another e-mail received and forwarded by a Mercantile Bank employee challenging the existence of racial discrimination in the United States, the trial court found that there was no evidence that the bank's employee or the persons to whom he forwarded the e-mail had anything to do with Tillman. The trial court also found that the e-mail evidence concerning Mercantile Bank's minority outreach efforts and comments about a Black board member did not establish pretext. For those reasons, the trial court found that Tillman failed to establish that the bank's proffered, legitimate reasons for acting as it did were pretextual.

For all these reasons, the trial court entered a verdict in favor of Mercantile Bank. The trial court entered a judgment consistent with its verdict on April 2022. Plaintiffs then appealed in this Court.

## II. EVIDENTIARY ERROR

We first address plaintiffs' argument that the trial court erred by relying on Courter's affidavit as substantive evidence at trial. Plaintiffs concede that they offered the affidavit at trial and that it was admitted but nevertheless argue that the trial court erred by relying on it as substantive evidence. We disagree.

An issue must be raised in or decided by the trial court to be preserved for appeal. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Plaintiffs moved to admit Courter's affidavit at trial and questioned Courter at length about her averments. Yet, plaintiffs never took any steps to limit the trial court's use of Courter's affidavit. Therefore, they failed to preserve their claim of evidentiary error.

We review unpreserved claims of evidentiary error for plain error affecting substantial rights. *Wischmeyer v Schanz*, 449 Mich 469, 483; 536 NW2d 760 (1995) (applying plain-error analysis to review an unpreserved evidentiary error during a civil trial); MRE 103(e). See also *Lenawee Co v Wagley*, 301 Mich App 134, 164-165; 836 NW2d 193 (2013).[1] "To demonstrate a

---

[1] This Court has historically applied two different standards to unpreserved issues in the civil context: plain error, see, e.g., *Mr Sunshine v Delta College Bd of Trustees*, 343 Mich App 597, 601; 997 NW2d 755 (2022); *Demski v Petlick*, 309 Mich App 404, 426-427, 873 NW2d 596 (2015); *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000), and the so-called

plain error, a party must show: (1) that an error occurred, (2) that the error was plain, and (3) that the plain error affected the party's substantial rights." *Mr Sunshine*, 343 Mich App at 601, quoting *Henderson v Dep't of Treasury*, 307 Mich App 1, 9; 858 NW2d 733 (2014) (quotation marks and brackets omitted). Plain error affects substantial rights if it prejudiced the party claiming error by affecting the outcome of the proceedings. *Mr Sunshine*, 343 Mich App at 601.

In its verdict, the trial court stated that it was using Courter's affidavit "to limn the history of the banking relationship between the parties . . . because it provides a detailed, chronological description of how the two sides interacted with one another over the course of their relationship." Plaintiffs argue that the trial court erred by relying on the affidavit as substantive evidence because Courter did not have personal knowledge of the underlying facts as required by MRE 602,[2] and the affidavit was admitted for the sole purpose of impeachment as permitted by MRE 806.

MRE 602 provides, in part, that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." MRE 602. The rule further provides that "[e]vidence to prove personal knowledge may consist of the witness's own testimony." *Id.* Courter testified at trial that she obtained certain information in her affidavit by examining Mercantile Bank records that predated her management of Tillman's portfolio. Therefore, there was sufficient evidence to support a finding that Courter had personal knowledge of the contents of the Mercantile Bank records. MRE 602 did not prohibit Courter from testifying about the contents of the Mercantile Bank records, nor did it limit the trial court's ability to cite Courter's affidavit when recounting the parties' historical interactions.

MRE 806 provides, in part, that when a hearsay statement—or a statement designated as nonhearsay under MRE 801(d)(2)(C), (D), or (E)—has been admitted, "the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness." MRE 806. The rule permits the trial court to "admit

---

"raise-or-waive" rule, see, e.g., *In re Conservatorship of Murray*, 336 Mich App 234, 240-242; 970 NW2d 372 (2021); *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 192-194 & n 5; 920 NW2d 148 (2018) (applying the so-called raise-or-waive standard, but "acknowledg[ing] that decisions of our Supreme Court and this Court have applied the plain-error standard of review to certain unpreserved issues in the civil context"). Recently, a panel of this Court resolved this apparent conflict, holding that the plain-error test does not apply in civil cases, and appellate courts instead apply the raise-or-waive rule. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 2-5 (holding that our Supreme Court requires application of the so-called raise-or-waive standard in the civil context). However, *Tolas* did not specifically address whether the plain-error test applies to unpreserved claims of evidentiary error. Therefore, *Wischmeyer* controls such that we review unpreserved claims of evidentiary error for plain error affecting substantial rights. See *Wischmeyer*, 449 Mich at 483.

[2] We observe that plaintiffs do not challenge Courter's testimony under MRE 602, only her affidavit.

evidence of the declarant's inconsistent statement or conduct, regardless of when it occurred or whether the declarant had an opportunity to explain or deny it." *Id.*

Courter's affidavit was admissible as nonhearsay under MRE 801(d)(2)(B) and (C). MRE 801(d)(2) provides that certain statements offered against an opposing party are nonhearsay. See MRE 801(d)(2). This includes statements that the party (against whom the statement is offered) "manifested that it adopted or believed to be true," MRE 801(d)(2)(B), and statements "made by a person whom the party authorized to make a statement on the subject," MRE 801(d)(2)(C). The affidavit plaintiffs now challenge satisfied both of these criteria. At the threshold, the affidavit was a statement offered against an opposing party because plaintiffs offered it against Mercantile Bank. See MRE 801(d)(2). Next, it was nonhearsay because it consisted of statements that Mercantile Bank manifested as having adopted or believed to be true. See MRE 801(d)(2)(B). It was also nonhearsay because it consisted of statements made by a person whom Mercantile Bank authorized to address the subject. See MRE 801(d)(2)(C). Indeed, Mercantile Bank used Courter's affidavit to support its pretrial summary disposition motion and did not object to its admission at trial. Accordingly, plaintiffs had every right to admit Courter's affidavit a substantive evidence. Because plaintiffs moved to admit Courter's affidavit without limitation, the trial court did not err by considering it as substantive evidence, in addition to its possible impeachment value under MRE 806. Cf. *Fassihi v St Mary Hosp of Livonia*, 121 Mich App 11, 13-14; 328 NW2d 132 (1982).[3] Therefore, the trial court did not err.

Even if the trial court had erred, such error would not warrant relief. The trial court made it clear in its verdict that it was using Courter's affidavit as a convenient summary of the parties' relationship. It did not use the affidavit to resolve any material factual dispute. Moreover, plaintiffs have not identified any prejudice that they suffered from the trial court's use of the affidavit. Thus, they have failed to establish plain error affecting their substantial rights.

## III. DISPARATE TREATMENT

Plaintiffs also argue that the trial court misapplied the law governing claims of disparate treatment in violation of the FHA and ECOA. In doing so, they argue that they presented sufficient evidence to establish their disparate treatment claims under the FHA and ECOA, and the trial court erred when it determined otherwise. Again, we disagree.

This Court reviews a trial court's findings of fact following a bench trial for clear error and its conclusions of law de novo. *Chelsea Inv Group, LLC v Chelsea*, 288 Mich App 239, 250; 792 NW2d 781 (2010). A finding of fact is clearly erroneous if there is no evidentiary support for the finding or if this Court is left with a definite and firm conviction that the trial court made a mistake. *Id.* at 251. We give deference to the trial court's findings because it is in a better position to examine the facts and judge credibility. *Id.*

---

[3] Although *Fassihi*, 121 Mich App 11, is not *strictly* binding pursuant to MCR 7.215(J)(1) because it was issued before November 1, 1990, as a published opinion, it nevertheless "has precedential effect under the rule of stare decisis" pursuant to MCR 7.215(C)(2). See *Wells Fargo Rail Corp v Dep't of Treasury*, 344 Mich App 351, 372 n 3; 1 NW3d 373 (2022).

Plaintiffs have not challenged the trial court's decision to dismiss all their claims on summary disposition except those for disparate treatment under the FHA and the ECOA. Moreover, plaintiffs have not challenged the trial court's determination that they failed to present evidence of direct discrimination such that they had to prove disparate treatment under the burden-shifting framework set forth in *McDonnell Douglas Corp v Green*, 411 US 792, 802-803; 93 S Ct 1817; 36 L Ed 2d 668 (1973). See *RL BB Acquisition, LLC v Bridgemill Commons Dev Group, LLC*, 754 F3d 380, 388-389 (CA 6, 2014) (noting that the burden-shifting framework applies to claims under the ECOA); *Mitchell v Shane*, 350 F3d 39, 47 (CA 2, 2003) (stating that the burden-shifting framework applies to disparate treatment claims under the FHA).

To establish a prima facie claim of discrimination in violation of the FHA, plaintiffs had to demonstrate that:

> (1) they were a member of a protected class; (2) they attempted to engage in a real estate-related transaction with [Mercantile Bank], and met all relevant qualifications for doing so; (3) [Mercantile Bank] refused to transact business with the plaintiffs despite their qualifications; and (4) [Mercantile Bank] continued to engage in that type of transaction with other parties with similar qualifications. [*Mich Protection and Advocacy Serv, Inc v Babin*, 18 F3d 337, 346 (CA 6, 1994) (quotation marks and citation omitted).]

To establish their claims of discrimination under the ECOA, plaintiffs had to establish that (1) they were an applicant for credit, (2) Mercantile Bank was a creditor, and (3) Mercantile Bank discriminated against them with respect to any aspect of the credit transaction on the basis of plaintiffs' membership in a protected class. See *Alexander v AmeriPro Funding, Inc*, 848 F3d 698, 705 (CA 5, 2017). Plaintiffs could meet their prima facie burden to demonstrate that Mercantile Bank discriminated against them in the provision of credit by showing that Mercantile Bank treated similarly situated persons outside the protected class more favorably. See *Inclusive Communities Project, Inc v Lincoln Property Co*, 920 F3d 890, 909-910 (CA 5, 2019). Accordingly, for both claims, plaintiffs had the burden to show that Mercantile Bank treated them differently than similarly situated borrowers outside of their protected class.

On appeal, plaintiffs do not address the trial court's finding that Mercantile Bank offered a legitimate, nondiscriminatory reason for its decision to proceed with foreclosure and its refusal to accommodate Tillman and his entities any further. They also do not address the trial court's finding that the nondiscriminatory reason was not a pretext for discrimination.

Under the *McDonnell Douglas* burden-shifting framework for resolving discrimination claims, plaintiffs had the initial burden to present evidence that allowed an inference of unlawful discrimination. See *White v Dep't of Transp*, 334 Mich App 98, 107-108; 964 NW2d 88 (2020). Even if plaintiffs presented evidence to establish their prima facie case, Mercantile Bank could still prevail by presenting evidence that it had a legitimate, nondiscriminatory reason for the actions that it took. Mercantile Bank presented a great deal of evidence that Tillman and his entities had suffered a financial collapse and that it foreclosed against them to mitigate its losses. Once Mercantile Bank presented that evidence, plaintiffs had to come forward with evidence that would allow the finder of fact to find that the proffered reason was a mere pretext. See *id*. at 108-109. The trial court found on the record evidence that the proffered reasons were not pretextual. On

appeal, plaintiffs do not argue that the trial court erred in any respect as to that finding. Establishing pretext was an essential element of plaintiffs' claims, and their failure to address it is fatal to their claims. See *id*. at 110-114.

Plaintiffs appear to argue in their reply brief that pretext was not at issue at trial because the trial court resolved that fact question when it ruled on the parties' motions for summary disposition. That argument is not supported by the record.

In its opinion and order denying summary disposition on Count 1 of the complaint, the trial court stated that it was denying summary disposition because the parties had developed a record that demonstrated that there were questions of fact as to whether Mercantile Bank engaged in disparate treatment. The trial court specifically stated that Mercantile Bank had identified evidence that it had a legitimate reason for acting as it did, and that plaintiffs presented evidence that those reasons were pretextual. The trial court concluded that the dispute over the evidence had to be resolved at trial. Consequently, the dispute over a legitimate, nondiscriminatory reason for Mercantile Bank's actions and whether that reason was pretextual was left for trial, and the trial court resolved it in favor of Mercantile Bank based on the evidence presented.

Plaintiffs have not challenged the trial court's finding regarding pretext, nor have they identified any basis for ignoring their failure to do so. Therefore, even if we were to conclude that the trial court erred when it determined that they failed to establish a prima facie case of disparate treatment, plaintiffs would not be entitled to relief. Consequently, we decline to consider their remaining claims of error.

We affirm.

/s/ Kathleen A. Feeney
/s/ Michelle M. Rick
/s/ Noah P. Hood