*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ACME, Minor.

UNPUBLISHED
July 18, 2024

No. 369029
Grand Traverse Probate Court
LC No. 15-033624-GM

Before: RIORDAN, P.J., and RICK and N. P. HOOD, JJ.

PER CURIAM.

Petitioner, who is the father of the minor child at issue, AE, appeals as of right the probate court's order denying his motions to disqualify the judge, to remove the child's guardian ad litem (GAL), to compel discovery, to suppress evidence, to reinstate parenting time, and his "petition regarding legal violations." We affirm.

## I. FACTUAL BACKGROUND

AE's parents were never married and their relationship ended before his birth. Following a paternity action, AE's mother was granted custody and petitioner was granted parenting time. In 2014, Children's Protective Services became involved, and AE was placed with his paternal grandmother. AE's grandmother, respondent Kelley Plambeck, then commenced guardianship proceedings. Neither parent objected and grandmother was thereafter granted a full guardianship. Father was in jail at that time, has been incarcerated several times since, and has never had custody of AE. Grandmother was granted full discretion concerning parenting time for either parent. Over the years, she permitted and encouraged both parents to visit AE. However, AE's parents had only irregular contact with the child. AE's mother returned to the Traverse City area in the autumn of 2019, and grandmother allowed AE's mother to move into her home for several months. Father then expressed interest in seeing AE more often.

Grandmother and father agreed that AE should spend every other week with father during the spring and summer school breaks in 2020. When the new school year started in the fall of 2020, father began weekend visits with AE. In October 2020, father started a new job in Wixom. Grandmother drove AE to Lansing for a weekend visit with father on November 20, 2020, and father and AE stayed at a hotel for the weekend. This process was repeated a few weekends later.

However, father refused to return AE to grandmother's care after the second visit, citing concerns related to COVID-19. Law enforcement became involved and AE was finally returned to grandmother. Grandmother then filed a petition for scheduled visitation, and father responded with a petition to terminate the guardianship.

In January 2021, the trial court entered a written order setting forth a parenting time schedule for father. The order indicated that parenting time would be subject to modifications as the parties might agree. The order also indicated that an evidentiary hearing would be scheduled on the petition to terminate the guardianship, and that a GAL would be appointed for AE. Father withdrew his petition to terminate the guardianship before the hearing took place. He then filed several petitions requesting that he be permitted to set his own schedule for parenting time, asserting that grandmother was refusing to cooperate with him.

In May 2021, the GAL filed a motion for a psychological evaluation of father. Her allegations included that father "has struggled with anger issues, drug use, and paranoia over the past decade," and that a police detective reported having "several contacts with [father] and he was concerned about his erratic behavior to the point that he made a referral to a nearby hospital . . . in 2019." The GAL additionally reported that AE "has repeatedly made the statement that he 'doesn't want to make dad mad,'" and was "afraid of him." According to the GAL, father "has demonstrated unstable, erratic, paranoid speech and behaviors throughout this case and for years prior thereto, and the GAL is concerned about the effect this is having on [AE] and his emotional well-being."

At the hearing that followed, the trial court expressed the concerns that father had "shown erratic behavior . . . at different hearings," and that the court had neither a valid residential address for him nor any verification of employment. The court thereafter entered an order requiring father to submit to a psychological evaluation. It assigned Dr. Wayne Simmons as the evaluator, but noted the parties could choose a different psychologist if they could agree on one in writing. The court ordered that "[n]o hearing shall be scheduled on any further petitions filed by [father] until the Court receives the psychological evaluation." An additional order was entered in October 2021, which stated that until father provided the court with the ordered psychological evaluation, his parenting time would be restricted and would include no overnights. Afterward, father filed several petitions to modify or terminate the guardianship. The trial court entered several orders stating that the petitions would not be considered because father had yet to show that he had obtained the required psychological evaluation.

A hearing took place regarding a petition filed by grandmother to revoke father's visitation rights in November 2022. Grandmother explained that father had been complying with the latest parenting-time order "until October 14th when he left paperwork in our mailbox and said that he had submitted the psych eval to the courts and he was keeping [AE] for the weekend." Grandmother asserted that she insisted that father comply with the order until the court indicated otherwise, but said that father "he ignored me and took [AE] to Grand Rapids for the weekend." Grandmother further reported that father did the same thing a month later.

Father's attorney explained that father admitted that it was a mistake to presume that what he submitted as a psychological evaluation automatically lifted the recent constraints on his parenting time. An order entered the day after the hearing restricted father to "supervised parenting

time with [AE] through Safe Haven or another third party organization that facilitates supervised parenting time that is agreed upon by the parties."

A GAL report filed in March 2023 included the following information:

[Father] then had a nurse practitioner in Alabama perform a "mental status exam" in October of 2022 and presented this to the Court in place of the Court-Ordered Psychological Evaluation by Dr. Simmons. No diagnosis or treatment plan was included in the NP's assessment and according to the questions asked [father] denied having any issues . . . . [Father] finally complied with the Court's Order and was evaluated by Dr. Simmons in December of 2022.

\* \* \*

Dr. Simmons' Psychological Evaluation is alarming yet unsurprising . . . . What is described by Dr. Simmons, however, is a highly dysfunctional parent with tremendous mental health issues requiring treatment. Unless and until treatment is sought and accomplishes its goal, [AE] will be at risk even in a supervised setting. Unfortunately, [father] is unlikely to pursue treatment for the very reason that his mental illness does not allow him to see the reality of his struggles and the need for significant treatment.

In a subsequent order, the trial court stated that father's "in-person parenting time shall be suspended until [he] can provide proof that he is participating in and benefitting from mental health treatment from a licensed psychologist/psychiatrist[,]" but that he would be permitted "supervised telephonic/face-time, etc. visits . . . at the discretion and monitoring of the guardian." Father filed what he labeled an "appeal" with the trial court in early May 2023. The court responded with an order stating that it was treating father's objections as a motion for reconsideration, and that the motion was denied. Father repeated that exercise, with the same result, as reported in an order entered in late May 2023.

An order issued a month later stated that father "filed a 'response to judge's order' that appeared to be a motion for judicial disqualification," which the court denied for failure to conform with the pertinent timing and pleading requirements. The order continued:

[O]n June 9, 2023, [father] filed a fourth pleading, in which he requested a hearing to reinstate in-person visitation with his son and accused this Court and Judge of being "ran on your prejudice [sic] sexist tyrannical opinion in your fantasies." His pleading did not include any evidence that he has participated in or benefited from mental health treatment . . . . Further, he has failed to present any new argument or facts for this Court to reconsider. [Third alteration in original.]

The order stated that father "is prohibited from filing future petitions seeking reinstatement of his in-person parenting time until he can demonstrate that he is participating in and benefiting from mental health treatment from a licensed psychologist or psychiatrist."

-3-

In November 2023, the trial court conducted a hearing on "multiple petitions that were filed by [father], . . . and that included a petition and order for disqualification of myself as well as the [GAL], . . . and then a request for reinstatement of parenting time for [father]." The court acknowledged that father had recently provided "some information that appears that you may be seeing a provider," but stated that "the information isn't sufficient to tell whether this provider is treating you for mental health issues and whether you're benefiting from the treatment," and explained that the court granted the instant hearing in order to give father the opportunity to present his mental-health provider, but that he had brought no such provider to testify.

The GAL reminded the court that the record included "a psychological evaluation from Dr. Simmons with several very concerning diagnoses that need to be ruled out, and paranoia with psychotic features, that absolutely causes this [GAL] tremendous concern about unsupervised visits." The trial court opined that parenting time would remain supervised, given father's history and unresolved psychological issues. The trial court entered an order denying all of father's motions, and stating that father "is hereby ENJOINED from filing further pleadings of this nature until he provides specific information showing that he is participating in and benefiting from mental health treatment." This appeal followed.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

All child-custody orders must be affirmed on appeal unless the trial court's factual findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue. MCL 722.28; *Fletcher v Fletcher*, 447 Mich 871, 876-877; 526 NW2d 889 (1994). "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019). "A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id.* (quotation marks and citation omitted). In child-custody cases, an abuse of discretion occurs "when the trial court's decision is palpably and grossly violative of fact and logic." *Dailey v Kloenhamer*, 291 Mich App 660, 664-665; 811 NW2d 501 (2011) (quotation marks and citation omitted).

"When this Court reviews a decision on a motion to disqualify a judge, the trial court's findings of fact are reviewed for an abuse of discretion, while the application of the facts to the relevant law is reviewed de novo." *People v Roscoe*, 303 Mich App 633, 647; 846 NW2d 402 (2014) (quotation marks and citation omitted).

Although father at least nominally preserved most of his issues, he takes issue on appeal with the appointment of grandmother as AE's guardian. An issue is preserved by raising it before the trial court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). In father's statement of issues presented, he asks whether appointing grandmother as AE's guardian was a "conflict of interest" and claims that she is "unprofessional." Except for his framing of this question on appeal, father's brief says nothing of unprofessionalism, or a conflict of interest, on the part of grandmother. He likewise never made this specific claim in the court below. At most, father filed a petition in December 2020 to terminate the guardianship, but withdrew that petition before the evidentiary hearing could take place. He has apparently filed similar petitions since,

-4-

which the court refused to consider because he had yet to show that he had engaged in, and benefited from, mental-health treatment. Accordingly, petitioner has not properly placed the propriety of grandmother's continued guardianship at issue.

"[J]udicial prudence favors applying the plain-error standard to an unpreserved claim in a child-custody proceeding." *Quint v Quint*, ___ Mich App ___, ___; ___ NW3d ___ (Docket No. 368002); slip op at 7. Demonstrating plain error in this context requires father to establish "(1) that an error occurred, (2) that the error was plain, and (3) that the plain error affected [his] substantial rights." *Henderson v Dep't of Treasury*, 307 Mich App 1, 9; 858 NW2d 733 (2014). Reversal is warranted when the plain, forfeited error seriously affected the fairness, integrity or public reputation of judicial proceedings. [*Quint*, ___ Mich App at ___; slip op at 7, quoting *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020).

## B. SCOPE OF THE CUSTODY ORDER

As an initial matter, we take issue with father's repeated characterizations of the results below as "terminating" his parental rights, ending the "parent-child relationship" generally, or ending his parenting time with AE in particular. This case does not pertain to the termination of father's parental rights in any way whatsoever. The trial court additionally did not terminate father's right to parenting time, but instead merely restricted father to supervised parenting time in the child's local area with no overnights, then to supervised telephonic contact, pending father's engaging in, and benefiting from, mental-health treatment. Father's assertions to the contrary are pure exaggeration and contrary to the record before us.

## C. JUDICIAL BIAS

The several petitions that prompted the November 27, 2023 hearing included one to disqualify Judge Jennifer L. Whitten for lack of impartiality. The trial court explained its denial of the motion as follows:

> With regards to the motion to disqualify me, . . . [father], you filed multiple motions for disqualification, and in those motions you have . . . made claims about discrimination and defamation and things of that nature.
>
> With regards to this specific motion, disqualification is waived where proper procedure is not followed. And here again, there is nothing new in your motion. You repeat the same claims. Also there was no affidavit provided with the motion, which is a requirement of the Court Rule. Even if the Court looked to the substance of it, it appears that the reason that you want me disqualified is because you don't agree with the decisions that I've made.
>
> And the case law is pretty clear that even when the court makes repeated decisions that aren't in align[ment] with what someone wants or needs, that is not a basis for disqualification. . . . [B]ias or prejudice cannot be established merely by repeated rulings even if the rulings are erroneous. . . . So there really is not a basis for disqualification, [father]. So I'm going to deny both those motions.

On appeal, father argues that Judge Whitten was biased against him because of his gender, claiming that she treated AE's mother more favorably than him. Setting aside our questions about the veracity of that claim, we hold that we need not consider father's substantive arguments, because Judge Whitten denied the motion for disqualification on the basis that father failed to follow the pertinent pleading requirements. See MCR 2.003(D)(2). Father does not dispute that procedural reason for denial of the motion; thus, we decline to further address this issue.[1]

## D. EVIDENCE

In his brief on appeal, father's entire argument under the heading "Tainted Evidence" consists of the following:

> The probate court's orders regarding [father]'s mental condition, placement, visitation, and care plan were improperly based on Dr. Simmons' flawed psychological evaluation, which relied on [grandmother's] and [the GAL's] forgery, fabrication, tampering with evidence, and inadmissible character attacks in violation of the Mental Health Code's standards and rules of evidence. This tainted evidence rendered the orders unreliable and invalid.

In the trial court, father filed a petition he fashioned as an "Objection to Suppress Evidence," in which he asserted that the GAL offered the court incompetent or manufactured evidence against him. Father also complained generally about unreliable evidence against him at the hearing below, specifically targeting grandmother, Dr. Simmons, and AE's GAL. In response to father's attempt to interpose evidentiary objections in connection with certain statements from the GAL, the court responded that the GAL was "not testifying[;] . . . she's making an argument." Later in the proceeding, after listening to father's "objections through the Michigan Rules of Evidence," the court stated that it would again deny the objection. The court opined that father "failed to state a claim upon which relief can be granted[,]" and that "[t]here is really no valid legal theories that you've argued."

We agree with the trial court that father has offered no valid arguments for challenging the information before the court. He cites no authority for the proposition that a GAL or guardian may not include hearsay in nontestimonial offerings, such as written or oral reports to the court. Nor does he identify precisely what grandmother or the GAL said that constituted slander or speculation, or identify any lay opinion testimony that the court accepted that should have been the exclusive province of experts. Father therefore fails to show that the trial court relied on any improper evidence.

## E. GENDER DISCRIMINATION

---

[1] We note that father persisted with his objections to the probate judge to the point that the record now includes a December 19, 2023 order entered by the chief judge of the Grand Traverse Circuit Court stating that "the decision of Judge Jennifer L. Whitten to deny the Motion for Disqualification is affirmed."

Father repeatedly argued below and reiterates on appeal that the participants in this case, including the trial court, discriminated against him because of his gender. Father's scanty factual premise for this claim mainly centers on his assertion that grandmother, the GAL, and the trial court treated AE's mother better than they treated him.

The trial court denied father's motion for recusal on the basis that he failed to follow the pertinent pleading requirements, and as noted *supra*, father does not dispute that procedural basis for denial of the motion on appeal, thus abandoning any appellate objections. Father additionally cites no authority for the proposition that a court deciding whether to restrict parenting time pending the parent participating in, and benefiting from, mental-health treatment must look beyond how that parent behaves or in any way concern itself with the other parent. Nor does father cite authority for the proposition that a guardian's, or GAL's, poor treatment of a parent, whether motivated by gender discrimination or otherwise, is a basis for reversing a custody order. For these reasons, father's protestations of gender discrimination do not warrant appellate relief.

## F. CONSTITUTIONAL ISSUES

Father also asserts that his constitutional rights to Equal Protection and Due Process were violated. See US Const, Am XIV, § 1; Const 1963, art 1, §§ 2 and 17. However, other than his unsubstantiated and unpersuasive claims of gender discrimination, as discussed above, father offers no constitutional analysis at all, thus abandoning appellate objections. "A party may not merely announce his position and leave it to us to discover and rationalize the basis for his claim." *In re Toler*, 193 Mich App 474, 477; 484 NW2d 672 (1992). See also *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002) (stating that a cursory argument, lacking citation of relevant authority or application of the law to the facts, is insufficiently briefed and therefore abandoned).

## G. STATUTORY VIOLATIONS

Father next asserts that he was the victim of mental-health discrimination, as well as gender discrimination, in violation of several statutory schemes, as well as attendant administrative rules and court rules, citing, e.g., the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*, the Mental Health Code, 330.1001 *et seq.*, the Health Insurance Portability and Accountability Act, 42 USC 1320d *et seq.*, the Health Information Technology for Economic and Clinical Health Act, 42 USC 17901 *et seq.*, and the Americans with Disabilities Act, 42 USC 12101 *et seq.*

Father fails to identify any specific statutory or regulatory provision prohibiting a court from considering a parent's mental health when deciding child-custody matters. He similarly offers no authority that would limit a court's use of such information. Nor does father cite any authority that would support the proposition that irregularities concerning adherence to such authorities on the part of the court or others involved in the case are a basis for reversing a custody order. He therefore offers this Court no basis for crediting this appellate objection. See *Yee*, 251 Mich App at 406; *In re Toler*, 193 Mich App at 477.

## H. ACCUSATIONS AGAINST GUARDIAN

Father asserts that grandmother engaged in various improprieties, and argues that the trial court erroneously granted her the status of guardian of AE. However, father thus raises an issue

that was not properly before the court. As noted, father did not object to grandmother's appointment as guardian in the first instance. He later withdrew his petition to terminate the guardianship, and thereafter raised the issue in petitions the trial court declined to consider because father had yet to show that he had submitted to a psychological evaluation. The trial court therefore did not have occasion to revisit the issue. The propriety of continuing the guardianship was not properly raised or decided below, leaving this Court with no basis to review this issue.

## I. ACCUSATIONS AGAINST GAL

The several petitions that prompted the November 27, 2023 hearing below included one to disqualify AE's GAL, to which father attached a page of allegations, including assertions of conflict of interest, defamation, "Gender Hate through Harassment and Intimidation," "hear say . . . and speculation . . . [a]s well violations in my Fourteenth Amendment, Parental Rights Amendment and Parental Rights Restoration Act."

The trial court explained that it was denying the petition because "[t]he Court finds that [father] failed to provide any evidence to justify the disqualification of the [GAL]." Father asserts on appeal, without record citation or factual foundation, that the GAL engaged in "forgery, fabrication, tampering with evidence, and inadmissible character attacks," which "rendered the orders unreliable and invalid." With this reiteration of his broad and unsupported allegations, father neither asserts that the trial court overlooked any evidence in support of them, nor does he attempt to draw this Court's attention to any such substantiation. Father thus provides this Court with no basis for reversing the trial court's denial of that petition.

## J. REPORT MISCONDUCT

Father's statement of the questions presented for this appeal include the assertion that "the discriminatory actors,"—presumably referring to grandmother and the GAL—"should be reported for potential criminal conduct related to their falsification of records and evidence." Indeed, in his prayer for relief, father urges this Court to report grandmother and GAL "to the appropriate authorities for investigation of potential criminal conduct related to discrimination, harassment, forgery, fabrication, and evidence tampering in [father]'s case." However, father misapprehends the role, and proper scope of operations, of this tribunal. We decline father's invitation to step outside of our judicial error-correcting role by insinuating this Court into the business of initiating criminal prosecutions.

## K. PSYCHOLOGICAL EVALUATION

The trial court found that "the psychological evaluation with Dr. Simmons . . . confirmed that there were some serious concerns" with father's mental health, and explained that it would not allow "unsupervised time or increased time with [AE]" until father presented "evidence in the form of testimony from a treating psychiatrist or psychologist or another evaluation" indicating that he was "participating in and benefiting from that treatment." It is apparent that the trial court relied heavily on Dr. Simmons's evaluation when it continued the limitations on father's parenting time.

Father argues that the trial court should have disregarded Dr. Simmons's psychological evaluation of him, on the grounds that it failed to satisfy statutory requirements for a proper

evaluation "by improperly relying on Zoom in hearsay statements, speculative claims, and lay opinion testimony about [father]'s character from [grandmother] and [the GAL]," and because Dr. Simmons considered "inadmissible character evidence in assessing [father]'s mental condition," in violation of various statutes. Father further asserts that the trial court allowed Dr. Simmons, grandmother, and the GAL "to actively harass through mental discrimination by Forgery and Fabrication in falsified and tampered with evidence without any history, laws broken or relevance to [AE]."

Concerning father's complaint about Dr. Simmons's "relying on Zoom," father mentions "Zoom" in his brief on appeal only by way of his framing of one of his questions presented. Father neither explains the extent to which Dr. Simmons relied on videoconferencing technology, nor cites authority for the proposition that any such reliance invalidates a psychological evaluation. Further, to the extent that father challenges the competence or veracity of the evidence upon which the trial court and Dr. Simmons relied, we earlier expressed our agreement with the trial court that father presented "no valid legal theories" for his evidentiary objections. Similarly, to the extent that father reiterates his claims of improper discrimination, his introduction of assertions of "harassment" adds nothing to the arguments we rejected *supra*.

With his statements of the questions presented, but not his arguments for this issue, father refers to several statutes and other textual authorities, but offers no analysis specifying the particular provisions of those authorities that were violated in connection with Dr. Simmons's evaluation, or the actions allegedly taken by Dr. Simmons (other than the vague reference to reliance on Zoom), grandmother, or AE's GAL, that resulted in such violations. Further, father cites no authority for the proposition that any of the alleged violations themselves would be grounds for reversing a custody order. For these reasons, we reject father's challenge to the trial court's reliance on Dr. Simmons's psychological evaluation.

Affirmed.

/s/ Michael J. Riordan
/s/ Michelle M. Rick
/s/ Noah P. Hood